THE KANSAS MILL-OWNERS' AND MANUFACTURERS' MUTUAL FIRE INSURANCE COMPANY v. THE CENTRAL NATIONAL BANK OF ELLSWORTH *et al.*

**No. 11253.**

1. INSURANCE— *Stenographer's Notes as Testimony — Irregularity Cured.* Plaintiff read from stenographer's notes of the evidence on a former trial what the agent of defendant had testified to concerning his prior acts and statements in dealing with persons from whom he received an application for insurance. The evidence was objected to for the reason that the statements were not part of the *res gestæ*, having been made long after the transaction to which they related, and hence not binding on the principal. The objection being overruled, defendant asked leave of the court, and was permitted to read all of the testimony of the witness at said former trial as cross-examination. After plaintiff had rested its case, defendant put the witness upon the stand, and he was fully examined by both parties. *Held*, that if any error was committed in the admission of said statements of the agent, the same was cured by subsequent action of the defendant.

2. ———— *Contents of Application—Deception of Agent.* An agent, in receiving a written application for fire insurance on a mill, required the applicant to answer this question: "Do you agree to keep a watchman on the premises at all times when not in operation?" The answer was written down by the agent, and there was evidence that the insured instructed him to write "no" after the question. The answer was written "yes." *Held*, that the court did not err in refusing to instruct the jury that no recovery could be had on the policy if the insured, at the time he signed the application, or after he received the policy, might, by the exercise of ordinary care and prudence, have known the contents of the same.

Error from Ellsworth district court; R. F. THOMP-SON, judge.    Opinion filed June 10, 1899.    Affirmed.

*W. W. Nevison,* for plaintiff in error.

*Ira E. Lloyd,* for defendants in error.

The opinion of the court was delivered by

SMITH, J. :   L. H. Westerman and Henry Rammels-berg were the owners of a grist-mill in Ellsworth, Kan. They insured the same with the plaintiff in error for the sum of $5000 on the 27th day of November, 1889, for five years.   The application for the policy was made by said firm, and there was no agreement contained in it to keep a watchman on the premises when the mill was not in operation.   About the 16th day of June, 1890, Westerman sold his interest in the milling property to his partner Rammelsberg, and made a written assignment of his interest in said policy of insurance to the latter.   This assignment was approved by the insurance company.   The company, however, required Rammelsberg to make a new application. It is claimed by the company that Rammelsberg agreed in this that he would keep a watchman on the premises at all times when the mill was not in operation.   Rammelsberg insisted that the application was made to one Atkinson, agent of the company, at Ellsworth, and that he (Rammelsberg) signed it at that place ;   that he made no agreement to keep a watchman on the premises, and that he did not know that the application contained any agreement to that effect, and that he positively refused to agree to keep a watchman.   The property insured was burned on the 12th day of April, 1893, at 11 : 30 P. M., after the mill had ceased operation and had been shut down from about

five o'clock in the afternoon. There was no watch-man on the premises. All rights of Rammelsberg in the policy came to the defendant in error by assign-ment. On the trial the evidence was confined to the question whether there was an agreement upon the part of the insured to keep a watchman on the prem-ises at all times when the mill was not running. There was a verdict and judgment for the plaintiff below.

But two questions are argued in the brief of the in-surance company—error in the admission of the dec-larations of Robert Atkinson, its general manager, and in refusing and giving certain instructions to the jury. The plaintiff below was permitted to read extracts from the testimony of Robert Atkinson, the secretary and general manager of the company, given on its be-half at a former trial of the case, regarding what was said and done by him and the insured at the time the second application for insurance was made. This tes-timony was read from a case-made prepared for this court, but no objection was made upon that ground. In fact, it was admitted that the case contained the evidence of the witness as given at the previous trial. The objection urged in the court below and here is that this testimony amounted to nothing more than proof of statements concerning a transaction made by the agent Atkinson long after the application for in-surance had been made to him, that such statements contained in his former testimony were not part of the *res gestæ*, were hearsay, and not evidence against the company. The evidence was read at the last trial, in June, 1898, from testimony of Atkinson given at a former trial in May, 1894.

It will be unnecessary to discuss the objections to competency directed against the admission of this

testimony. The error, if one was committed, is not, in our judgment, sufficiently serious and material to justify a reversal of the cause, in view of the subsequent action of the plaintiff in error on the trial in the court below. After the plaintiff below had read such portions of the testimony of Atkinson at a former trial as it desired, over the objections of the insurance company, the latter then asked leave of the court, which was granted, to read all of the testimony of the witness given at the previous trial by way of cross-examination. Thereupon all of his former testimony, both in direct and cross-examination, of which plaintiff below had read a part, was read to the jury by the defendant insurance company. Thereafter, when the plaintiff below had rested its case, the witness Atkinson was sworn, placed upon the stand in person by defendant, and examined and cross-examined at great length. He fully detailed his connection with the application for insurance, and went into all the facts and circumstances regarding that clause in the application relating to the keeping of a watchman. If there was any error in the admission of the statements made by Atkinson at the former trial, we do not think the same could have prejudiced the insurance company. On both occasions Atkinson was a witness in its behalf, and on the last trial his testimony was twice presented to the jury, thus giving the company the benefit of whatever emphasis might follow repetition. The plaintiff in error was certainly not prejudiced by the action of the court. If error was committed in getting before the jury statements of the witness which might be prejudicial to the insurance company, the error was fully neutralized by a reading of all the testimony given at the same time,

and the further examination of the witness fully and exhaustively on the matters in issue.

On the second question, both Rammelsberg and Westerman testified that Atkinson told them that the second application, which was signed in Ellsworth when Atkinson was there, contained the same provision as the first, in which no watchman was required. This testimony was contradicted by Atkinson, however, who testified that he went to Ellsworth on August 5, 1890, saw Rammelsberg about the application, and told him that he would insist upon the contract providing for a watchman, to which Rammelsberg, after some objections, finally agreed; that he then went to Ottawa, the headquarters of the company, and on August 12 sent a copy of the application to Rammelsberg containing an agreement to keep a watchman, which the latter signed and sent back; that about three days thereafter he sent back the policy, with application attached, to Rammelsberg. Plaintiff in error complains of the trial court because of its refusal to give to the jury certain instructions tendered, which are to the effect that if Rammelsberg, at the time he signed the application for insurance, knew, or might by the exercise of ordinary care and prudence have known, that said application contained an agreement to keep a watchman on the premises when the mill was not in operation, or afterward received a copy of said policy with the application, and knew or might have known by the exercise of ordinary care and prudence that said application contained an agreement to keep a watchman, and made no objection thereto, and made no offer to return said policy to the insurance company, but retained the same, then he was bound to keep a watchman when

the mill was not running; and if a fire originated at
that time, and no watchman was kept, there could be
no recovery.    One of the instructions refused is as
follows:

"If Rammelsberg, before and at the time he signed
said application, could have read said application, and
if it was a fact that the witness Atkinson told Ram-
melsberg that the application was the same as the old
one, yet that would not excuse him from reading said
application or having it read to him; he was bound
to use all reasonable care to learn the contents of the
paper he was to sign."

The court below instructed the jury as follows:

"If at the time the new application was presented
to Rammelsberg for his signature he could read, and
he neglected to read said application, he is bound by
the conditions contained in said application, unless the
defendant used some device or did some act which
would have caused a man of ordinary prudence to re-
frain from reading said application."

We think the instruction given covered the law of
the case, and that the court was right in refusing to
instruct as requested.    If the insured relied on the
statement of the company's agent to the effect that the
new policy issued to him did not require the keeping
of a watchman, which requirement was not made in
the former policy, and he signed the application
written by the agent, which was made part of the pol-
icy, then we think the insured had the right to rely
upon the agent's statements, and his failure to read
the application and to verify the written words would
not be an act of omission amounting to negligence.
In the case of *Continental Ins. Co. v. Pearce*, 39 Kan.
396, 404, 18 Pac. 291, the question here was involved.
The court said:

"The defendant claims that plaintiff was respon-

sible for such statements, because he signed the application after he had an opportunity to read and examine it, and having thus entered into an agreement he should not be permitted to say that he did not sign it with full knowledge of its contents. When the application was taken Beals (the agent) handed it to plaintiff, who said: 'You read it; I have n't my glasses with me'; and then Beals read a part of it, but not the answers that were false. The first time plaintiff knew they were in the application he learned it from another agent of the defendant, who came to adjust the loss. The plaintiff evidently trusted to Beals to fill out the application truthfully. He was not dishonest, did not misrepresent, and did not intend to deceive. The only thing that he was guilty of was that he did not read the answers that he gave to Beals to transcribe. The dishonesty was all on the part of the agent of defendant. . . . It is insisted that under such circumstances the assured should be bound by his written application, unless there was some crafty device or stratagem resorted to to prevent him from reading the application which he signed. This is the ordinary rule in signing a written contract or stipulation ; but after the payment of the premium, we are unwilling to apply it to its full extent to the system of taking applications, which is now almost universally adopted by insurance companies to obtain business. Its practical application would work injustice to the insured." See also *Sullivan v. Phœnix Ins. Co.*, 34 Kan. 170, 8 Pac. 112.

In *Temmink v. Insurance Co.*, 72 Mich. 388, 40 N. W. 469, which was an action upon a policy of insurance, the agent took down answers of the applicant for insurance, but fraudulently changed the same. The court said :

" If the document was not truly interpreted to her, or if, as the jury must have found, it was falsely represented, at least by implication, it would be going too far to hold her ( the insured ) estopped by what she was in no fault for relying on. By the testimony

of all parties the agent assumed the whole preparation of the paper, and she had a right to suppose he did it honestly.  It is not her fault if he did not act honestly.''

In the case at bar the agent was bound to write the answers to the questions in the application as dictated by the insured, and the latter was not called upon to assume that a fraud was being practiced upon him, nor can he be charged with negligence in believing that the agent was acting in good faith.  Although Rammelsberg might have received from the insurance company the policy with the written application attached thereto, yet he had a right to assume that the answers made by him were correctly written, and cannot be chargeable with negligence for his failure to be suspicious, or for too much confidence in the good faith of the agent in carrying out his directions. (*Albany City Savings Institution v. Burdick*, 87 N. Y. 40 ; *Andrews et al. v. Gillespie*, 47 id. 487 ; *Botsford v. McLean*, 45 Barb. 478 ; *Hale v. Philbrick*, 42 Iowa, 81.) If the agent of the insurance company was guilty of a positive fraud, negligence by which the party injured exposed himself to the wrong or fraud will not bar relief. (*Speed v. Hollingsworth*, 54 Kan. 436, 38 Pac. 496, and cases cited.)

It was said in the former opinion :  '' It (the application for the policy) is the instrument solely of the insured in the sense that its execution is solely his act.'' The agent, however, acted as an amanuensis for Rammelsberg in writing down answers to the questions in the application, and the latter had the right to presume that his statements would be set down as they were made, and was not negligent in failing to read them over.

''A man who, by misrepresentation or concealment,

has misled another, cannot be heard to say that he might have known the truth by proper inquiry ; but must, in order to be able to rely on the defense that he knew the representation to be untrue, be able to establish the fact upon incontestible evidence, and beyond the possibility of a doubt.'' (Kerr, Fr. 79.)

In 1 Bigelow on Fraud, 525, the rule is thus stated :

''Indeed the courts would turn a deaf ear to a man who sought to get rid of a contract solely on the ground that its terms were not what he supposed them to be. But the courts would not refuse to listen, on the contrary they would give relief, where a plaintiff charged fraud upon the defendant in reading the contract to him, or in stating its nature or terms ; and also in leaving out terms agreed upon, or in inserting terms not agreed upon. This would obviously be true of cases in which the complaining party could not read, or could read only with difficulty, or in which a printed document was concerned containing much fine print. But the rule is not confined to such cases ; on the contrary it is very general.''

The jury must have found that Rammelsberg never read the application after the answers were affixed to the questions, otherwise the verdict would have been in favor of the insurance company. On this question the controversy centered. We do not understand that the court said or intimated to the jury that if the policy was received back from Atkinson by Rammelsberg, and the latter had read the provisions of the application before the fire, the plaintiff could recover. There was nothing but conjecture upon which to base a conclusion that Rammelsberg read the application after the time when Atkinson said he sent the same to him from Ottawa.

The judgment will be affirmed.