THE STATE EX REL. BULL DOG AUTO FIRE INSURANCE ASSOCIATION OF CHICAGO v. EWING C. BLAND ET AL., Judges of Kansas City Court of Appeals.

Division One, February 26, 1927.

**1. CERTIORARI: To Court of Appeals: Purpose: Questions for Determination.** The purpose of a certiorari directed to a court of appeals is to secure uniformity in opinions, and harmony in the law, and the question to be determined in each case is whether the ruling of the Court of Appeals conflicts with a decision of this court announcing a general principle of law, or whether, in a more specific sense, on a given state of facts, the Court of Appeals has announced and applied some conclusion of law contrary to the conclusion of this court upon the same or a like state of facts.

**2. INSURANCE: Application: Warranties: Question for Jury.** Having found the statements in the application for a policy insuring an automobile against loss by fire or theft were untrue, that the insured could read and write, that he was given an opportunity to read the application before he signed it, that he signed it without reading it, and that the untrue statements therein were warranties, the Court of Appeals, in ruling that the insured, in his action on the policy, under the facts in evidence, made a case for the jury, did not contravene prior decisions of this court.

**3. ———: ———: Written by Agent: Warranties: Instruction.** The Court of Appeals contravened no previous decision of this court in approving an instruction to the effect that if the insured, at the time he applied for an automobile insurance policy, made true answers to questions asked him by defendant's agent, that the agent wrote the answers into the application, and that the insured did not read the application as thus filled out, but

signed it without knowledge that his answers had been incorrectly written into it, then the warranties written into the application were not the warranties of the insured, and the defendant was not justified in refusing payment for loss under the policy on the ground that the warranties contained therein had been breached.

4. **INSURANCE: Written by Agent: Warranties: Instruction: Estoppel: General Rule.** It has frequently been ruled by the courts of appeals, and by the highest courts in other jurisdictions, that where the facts have been truthfully stated by the insured to the authorized agent of the insurer, but by the agent are misstated in the application for an insurance policy, the insurer cannot, after having accepted the premium and issued the policy, set up such misstatements in avoidance of its liability, there being no fraud or collusion on the part of the insured. And the reason is that the company assumes to draw the application so as to meet its own views as to its requirements; that the agent is the agent of the company, and his knowledge will be imputed to it; that the statements in the application are in fact his statements, and that the company is thereby estopped from controverting their truth; and that evidence to establish these facts is not an attempt to vary a written contract by parol, but the principle of estoppel is applied to prevent the company from profiting by its own misstatements of facts, which its own agent either purposely made, or led the insured to rely upon the erroneous answers as being immaterial. And while this court has not expressly adopted the rule, it has announced none to the contrary, but has applied the same principle of estoppel in insurance cases in Combs v. Hannibal Savings & Ins. Co., 43 Mo. 148, and Rissler v. American Central Ins. Co., 150 Mo. 366.

Corpus Juris-Cyc. References: **Courts,** 15 C. J., Section 518, p. 1092, n. 63; p. 1093, n. 66, 68. **Insurance,** 32 C. J., Section 601, p. 1333, n. 62.

*Certiorari.*

WRIT QUASHED.

*Walter W. Calvin* for relator; *Wayne C. Townley* and *Bert S. Kimbrell* of counsel.

(1) The Court of Appeals, having found that the statements in the application were admittedly false, that plaintiff could read and write, that plaintiff was given an opportunity to read the application before he signed it, and that plaintiff signed the application without reading it, held that plaintiff had a case for the jury and affirmed the judgment of the lower court; and in so holding erred and contravened the controlling decisions of this court in Gwin v. Waggoner, 98 Mo. 315; Crim v. Crim, 162 Mo. 544; Groff v. Logsdon, 239 S. W. 1087; Donnelly v. Trust Co., 239 Mo. 370; Woosley v. Wells, 281 S. W. 695. (2) The Court of Appeals approved Instruction 3 given on behalf of plaintiff which authorized a verdict for the plaintiff if the plaintiff signed the application without reading it and without knowing its contents, and in so holding erred and contravened the controlling decisions of this court in all the above cases.

*L. N. Musser* for respondents.

The contention of relator appears to be that the trial court and also the Court of Appeals in determining the points in issue, disregarded the well-established rule of law that parol testimony is inadmissible to explain, change or modify the terms of a written instrument, and that authorities cited by the Court of Appeals in affirming the judgment of the trial court, as also the authorities cited by respondent in his brief, are all in direct conflict with the lines of authorities in this and other states, to the effect that a person who can read and is not prevented from reading the instrument he signs, and no fraud, deceit or imposition has been practiced upon him as an inducement to obtain his signature, is estopped from denying his contract.    This contention is not well founded.    The relator mistakes the law as applicable to insurance matters, and what may appear in a casual glance as a conflict of the law is in reality no conflict when studied from the standpoint of the matter involved in each particular instance, and the subject under consideration.    The cases cited and relied upon by the relator all deal with the matter of contracts and negotiable instruments, and none with insurance matters.    In the latter class of cases the courts and text-writers have universally held that the rule has been modified, and so that the materiality or immateriality of facts connected with the risks on insurance is always for the jury.    Boggs Leathe v. American Ins. Co., 30 Mo. 63; Gaylord v. Lamar Fire Ins. Co., 40 Mo. App. 16; Horwitz v. Equitable Ins. Co., 40 Mo. 557; Franklin v. Atlantic Fire Ins. Co., 42 Mo. 456; Rissler v. Ins. Co., 150 Mo. 366.    When the reasons for this rule, are carefully considered, there is in reality no conflict in the authorities, but they are all uniform and in harmony with each other.    The cases cited and relied upon by relator have no application to the case at bar, since all of them were based on contracts and negotiable instruments, and the rule governing contracts of insurance is not in conflict with the rule announced by them.

LINDSAY, C.—*Certiorari.*    A judgment in favor of George H. Andrews, and against this relator, was affirmed by the Kansas City Court of Appeals, upon the second appeal in the cause, and it is insisted that the rulings made therein are in conflict with controlling decisions of this court.

The suit was one upon a policy of insurance of an automobile against loss by fire and theft.    The facts and the issues made by the pleadings are set forth in the opinion of the Court of Appeals, upon the first appeal, Andrews v. Bull Dog Auto Assn., 258 S. W. 714; and the statement thereof, by reference, is made part of the opinion upon the second appeal, and is as follows:

316 Mo.—36.

"The original policy for $1500 was issued February 25, 1921, on 'Oldsmobile touring car, 1920 model, motor No. 33332.' But afterwards by a rider attached to the policy, and dated March 9, 1921, the insurance under the former policy was canceled, and insurance in the sum of $1700 was created on insured's ' "new" automobile' described as 'Oldsmobile motor No. 3332; type of body, touring; No. of cylinders, 8; advertised H. P. 26; year's model, 1920.'

"The petition declared upon the contract as created by the policy and rider, and was in the usual form, alleging that the automobile on April 2, 1921, was stolen and destroyed by fire, and that defendant took charge of the wreck and disposed of it, but has refused to pay plaintiff his loss.

"The defense was false representations, constituting breach of warranties, as follows: (1) That said automobile was not mortgaged, when in fact it was; (2) that the motor number was given as 3332, when insured well knew such was not correct; (3) that the automobile was purchased new in March, 1920, from the Oldsmobile Motor Company, when in fact insured had purchased same second-hand from an individual in February, 1920; (4) that insured had paid $2300 therefor, when in fact he had paid less than that.

"The answer also set up that before defendant had learned the true facts it took possession of what was thought to be the salvage and wreck of the car, and sold it for what it was worth, but upon learning the facts it had tendered to plaintiff the amount the salvage had brought, together with the full amount of premium received.

"The reply consisted of a general and specific denial of the matters alleged in defense of the action. The reply also alleged that insured told defendant's agent the facts as they existed at the time.

"There is no question but that the written application, dated February 25, 1921, signed by insured, and on which the original policy was issued, stated that the automobile was a model of 1920, purchased of the Oldsmobile Company in March, 1920, at the price of $2300, and that it was not a second-hand car, and was not mortgaged.

"It is also conceded that plaintiff did not purchase the car new in March, 1920, of the Oldsmobile Company, but he bought it on February 24, 1920, of James Lo Bello, who was acting for a man by the name of Van Horn, who owned the car; that the purchase price paid for the car was not $2300, but $1850, of which amount $250 was paid in cash, and the balance represented by what seems to be an installment note, payable in installments of $50 each month for a year, and then the whole of the balance of said note became due, the whole secured by chattel mortgage.

"To meet the above situation, plaintiff testified in substance as follows: That when he bought the car, the insurance Van Horn had on the car was assigned to him, but it was about to run out, and,

a friend having recommended the defendant as a good company, and as plaintiff had found other insurance companies 'pretty high,' he called up Robinson, defendant's manager, over the telephone, and told him the insurance he had would run out that day, February 24, 1921; that Robinson told him, 'That's all right, come in to-morrow, and I will make out the policy. You are covered from now on.' That the next day he went to Robinson's office, and the latter asked him questions, which he answered, while Robinson filled out the application, which he (plaintiff) signed without reading.

"Plaintiff further testified that Robinson asked him the type of the automobile, and he told Robinson it, was a '20 model, seven-passenger, eight-cylinder Oldsmobile; that his recollection was Robinson asked him where he bought it, and he told Robinson he bought it from Lo Bello; that Robinson asked him what he paid for it, and he told Robinson he paid $1850; that Robinson asked him if the car was mortgaged, and he told him it was, but that he had arranged to take it up.

"Plaintiff testified that in answering the questions put to him by Robinson when the latter wrote up the application, he, plaintiff, sat on the opposite side of the table, across which he could see Robinson filling out the application, but he could not see what he wrote, nor did he read the application, relying on him to write it properly; that afterwards the policy was issued and delivered to him, and he put same in his desk without reading it; that later he lost some 'accessories,' and, having purchased a number of these, he went to see Robinson, and learned from him that his policy did not cover accessories; that Robinson asked him why he wanted more insurance, and he told Robinson he had purchased a number of accessories for the car and if his policy did not cover them he wanted one that did; that at Robinson's suggestion he, plaintiff, wrote to the home office of the company, and it replied, saying the car could carry only $1500 insurance, but if its condition was such that more coverage should be granted, the company would be glad to hear from him further. While the record is not as explicit as it might be on the matter now to be stated, yet it would seem from what does appear therein that plaintiff, or some one, noted on the bottom of this letter the various accessories he had purchased and their prices, all under the heading, 'The following are the reasons why I should have $1700 ins.' This was apparently sent to the home office, and afterward it issued and sent the above-mentioned rider dated March 9, 1921, wherein it was recited that the company 'hereby consents that the policy of George H. Andrews of Kansas City, Mo., shall be cancelled and changed from his automobile previously insured under policy No. 21675-2, to his "new" automobile described below, and car. Coverage on same starts from the date named herein; trade-name,

Oldsmobile; Motor No. 3332; type of body, touring; No. of cylinders, 8; advertised H. P. 26; year's model, 1920.' The insurance was fixed in the rider at $1700, both for fire and theft.

"Plaintiff testified that upon receiving the rider and noticing that it referred to a 'new' automobile, he went to Robinson and asked him about it, and Robinson replied: 'That's all right, that's their way of increasing them; you attach that to your policy; that covers the accessories you have insured.' "

After stating the circumstances attending the theft and destruction of the car, not necessary to be stated here, further statement of pertinent facts is as follows:

"There was evidence that the list price in Kansas City of the car when stolen and destroyed was $2300, cars being higher then.

"In explanation of the error in the motor number of the car, plaintiff testified that it was taken from the last 'Missouri state automobile registry certificate;' the true number being B-3332, but in making it out a typographical error occurred, whereby, instead of B-3332, the number was written '3-3332,' and this became 33332 in the policy.

"As to the mortgage on the car, plaintiff testified that the installment note and chattel mortgage provided that at the end of the year the full amount of the balance fell due, and he had negotiated to pay off the note, and so told Robinson; also that about the time it was due he did pay it off, but he did not get it back until afterwards, as the canceled note was left with the payee until the latter could release the chattel mortgage. It would seem from the record that the note, marked canceled March 8, 1921, was introduced in evidence, but it was not copied by appellant into the record. At any rate, whatever may have been the situation with reference to the mortgage at the time the original policy was issued, there was in fact no mortgage on the automobile at the time of the issuance of the rider March 9, 1921.

"Plaintiff admitted that the bill of sale, introduced in evidence, dated February 24, 1920, from James Lo Bello to plaintiff, for the car, at the price of $1850, was obtained from Lo Bello after the car was stolen, and that he obtained it because defendant had asked for or required it.

"Robinson, defendant's manager, admits he wrote the application, but denies that plaintiff telephoned him the day before, and swears positively and explicitly that he correctly wrote down the answers just as plaintiff gave them, and that the latter answered the questions just as they were shown in the application; and that, after the application was written up, he handed it to plaintiff and told him to read it over, and plaintiff did so and signed it."

The contention of counsel for relator is that having found the statements in the application were untrue; that plaintiff could read and write; that he was given an opportunity to read the application before he signed it, and signed the application without reading, the Court of Appeals erred in holding that the plaintiff made a case for the jury, and in so holding contravened the controlling decisions of this court in Gwin v. Waggoner, 98 Mo. 315; Crim v. Crim, 162 Mo. 544; Groff v. Longsdon, 239 S. W. 1087; Donnelly v. Missouri Lincoln Trust Co., 239 Mo. 370; Woosley v. Wells, 281 S. W. 695. For like reason, conflict with the decisions mentioned is claimed to exist under the ruling approving Instruction 3 given for plaintiff. That instruction proceeded upon the theory that if the insured made true answers to the questions asked by Robinson, and Robinson wrote answers into the application and the insured did not read the application thus completed, and signed it without any knowledge that his answers had not been correctly written into the application, then the warranties written therein were not the warranties of the insured, and the company was not justified in refusing payment for loss under the policy on the ground of breach of the warranties contained therein. It is taken as conceded that the application as written was not a true statement of facts.

"The purpose of this peculiar form of *certiorari* is to secure uniformity in opinions, and harmony in the law." [State ex rel. Vulgamot v. Trimble, 300 Mo. l. c. 101.] In this kind of proceeding the question to be determined is whether a ruling of the Court of Appeals conflicts with a decision or decisions of this court announcing a general principle of law, and controlling the question at issue, or, whether, in a more specific sense, on a given state of facts, the Court of Appeals has announced and applied some conclusion of law contrary to the conclusion of this court upon like facts. [State ex rel. v. Reynolds, 287 Mo. 169; State ex rel. Peters v. Reynolds, 214 S. W. (Mo.) l. c. 122.]

The ruling of the Court of Appeals rests upon a distinction made by it between contracts of the kind mentioned in the decisions cited, and a contract of insurance such as is here involved. In each of the cases cited there was a failure of a party to read or inform himself of the contents of the instrument signed by him. In Gwin v. Waggoner, the instrument was an agreement concerning the sale of mining property. In Crim v. Crim, the defendant signed a note which contained an agreement authorizing any attorney at law to appear in any court of the United States, and waive process, enter appearance and confess judgment upon the note. In Donnelly v. Missouri Lincoln Trust Company, the plaintiff did not read a clause in a subscription contract, prepared by a promoter of a company, declaring that the money to be paid by plaintiff and other subscribers

for bonds, was to be paid to a trust company as trustee. In Groff v. Longsdon, the plaintiff signed a quitclaim deed to land believing it to be a mortgage to secure a loan. In Woosley v. Wells, the instrument signed was the release of a claim for damages against a railway company. The Court of Appeals considered the well-known rule announced in the decisions referred to, and others, that, where one has an opportunity to read and inform himself of the contents of an instrument, which he signs, and by his own neglect fails to read or inform himself, he cannot afterward, in an action upon the instrument, be heard to say he did not know its contents, or that the writing so signed by him does not express the agreement made by him. In the case under consideration, the Court of Appeals has applied a rule which it determined to be appropriate in a case of this character, based upon the nature of the contract of insurance, the manner in which such contracts are formulated, and also the relation borne by the agent of the insurer, in the making of the contract.

The Court of Appeals, upon the evidence before it, held that the question whether the insured truthfully stated the facts to the managing agent was one for the jury, saying that if the insured told the agent there was a mortgage on the automobile which he had made arrangements to pay off, it was not so improbable as to be unworthy of belief that the agent wrote down that there was no mortgage upon the automobile. It found as a fact that there was no mortgage existing at the time the rider was attached, on March 9th. It is plain also from the statement made as to the evidence that, in attaching the rider on March 9th, referring to the automobile as "new," and as one bought in March, there was notice that it was the same automobile as that referred to in the original policy, which was dated on February 25, 1921. The statement in the rider that it was a "new" automobile was explained by Robinson in connection with the inclusion in the rider of additional accessories. In 32 Corpus Juris, page 1333-1334, may be found the rule quoted and applied by the Court of Appeals as follows: "Where the facts have been truthfully stated to its agent, but by his fraud, negligence, or mistake are misstated in the application, the company cannot, according to the generally accepted rule, after accepting the premium and issuing the policy, set up such misstatements in the application in avoidance of its liability, where the agent is acting within his real or apparent authority, and there is no fraud or collusion upon the part of the insured. Among the reasons given for this rule are: That the company assumes to draft the papers so as to meet its own views as to their requirements; that the agent is the agent of the company; that his knowledge will be imputed to the company; that the statements in the application are in fact his statements; that the company is estopped from controverting their truth; and that the evidence

does not constitute an attempt to vary a written contract by parol, although there is some authority to the contrary based on the theory that, in making the application, the solicitor is acting as agent of the applicant, or that the introduction of evidence to show the fact would violate the rule excluding parol evidence to alter a written contract.''

The Missouri cases, among the large number from many states, cited in support of the foregoing ''generally accepted rule,'' are cases decided by courts of appeals of this State. [Modern Woodmen of America v. Angle, 127 Mo. App. 94; Snyder v. Loyal Protective Ins. Co., 196 S. W. 1022; Lehmann v. Hartford Fire Ins. Co., 183 Mo. App. 696; Bever v. N. Y. Home Ins. Co., 141 Mo. App. 589; Coleman v. Caldwell Mutual Fire Ins. Co., 125 Mo. App. 643; Ormsby v. Laclede Farmers' Mutual Fire Ins. Co., 98 Mo. App. 371; Scott v. German Ins. Co., 69 Mo. App. 337; Shell v. German Ins. Co., 60 Mo. App. 644.] The decisions in these cases sustain the rule stated in Corpus Juris; and, in the opinions, the reasons moving those courts, and other courts of last resort, in like cases, are set forth. In these cases, and in those of other courts, the reasons given for the result reached vary somewhat, but at bottom is the ground of the nature of the transaction—the making and the enforcement of an insurance contract.

In Modern Woodmen v. Angle, 127 Mo. App. l. c. 111-113, numerous authorities are referred to and statement given of the deviation made by the courts, in cases involving contracts of insurance, from the strict rule that when the party to the contract can read, he must read, and relaxat on of the strictness of the parol evidence rule. It is there said: ''And so it is we find, although a slight deviation from principle, the overwhelming weight of authority is to the effect the insured may show by parol the answers to the questions were not written by him, and that he did not actually know the contents of the application when he signed it. In order to escape the rule with respect to the introduction of parol testimony to vary the writing. it is said the doctrine goes upon the idea the writing in evidence was not the instrument of the party whose name is signed to it, and that it was procured under such circumstances as to estop the insurer from using it or relying upon its contents. [See Bacon on Ben. Soc. (3 Ed.) sec. 458; Insurance Co. v. Wilkinson, 80 U. S. 222, 13 Wall. 222; Combs v. Han. Sav. Co., 43 Mo. 148; Pudritsky v. Sup. Lodge K. of H., 76 Mich. 248.]'' A discussion of the same subject may be seen in the extensive note in 16 L. R. A. (N. S.) 1165, which accompanies opinions in Haapa v. Metropolitan Life Ins. Co. (Mich.), 16 L. R. A. (N. S.) 1165, and Peoples' Fire Insurance Assn. v. Goyne (Ark.), 16 L. R. A. (N. S.) 1180. In the introduction to the annotation mentioned, at page 1167, referring to the nature of the

question and the different reasons given by the courts for a deviation from or relaxation of the rules, in their application to contracts of insurance, it is said:

"The important point would seem to be, however, not whether the parol-evidence rule is being violated in this manner, but whether an insurance contract is so different in its nature from other contracts as to make it an exception to the general rule that parol negotiations are deemed to be merged in the terms of a written contract; in other words, the parol-evidence rule is founded on policy for the purpose of preventing fraud. Will it become an instrument of fraud, if strictly applied in insurance cases? If the opportunities for fraud are made greater by the application of the rule than by relaxing it, then it would appear that the reason for the rule would fail, and that therefore the rule itself should not be applied.

"It will be seen from the examination of this note that the evidence question is not clearly presented in many of the cases, and, as before stated, in most of them is not mentioned at all. However, it must be apparent that the doctrine of waiver and estoppel applied to prevent the company from taking the premium and delivering what it is deemed to know to be a worthless policy is firmly established, and is not likely, in view of the great mass of authority in its favor, soon to be laid aside. Just how far it should be carried is a question of great importance, and may be better considered after an examination of the cases in which it has been applied."

Our conclusion is that the ruling of the Court of Appeals assailed in this action, is not in conflict with what appears to be the greater weight of authority, generally, nor in conflict with the former rulings of the courts of appeals of this State. The question, however, is whether that ruling conflicts with the controlling decisions of this court, in like cases. The question is one to be dealt with as a situation wherein it is claimed that an insurance policy, by reason of the warranties, is void from its inception. Some of the questions here were foreshadowed in Franklin v. Atlantic Fire Ins. Co., 42 Mo. 456. In that case there was no written application. The assured owned only an undivided one-half interest in the property insured, and it was subject to encumbrances. The policy contained provisions that if the interest of the assured was other than unconditional and sole ownership, it must be so reported to the company and so expressed in the policy, otherwise, the policy should be void. The condition of the title and the fact of the existence of encumbrances was not so stated in the policy. After loss, it was held to be competent for the assured to prove that before the policy was delivered, or the premium paid, he informed the agent of the company of the condition of the title, and of the encumbrance. It was held that it was the business of the agent to receive the application and

draw up the policy in proper form. In that case the testimony was that when the agent's attention was called to the circumstances, and that the character of the interest of the assured should be expressed in the policy, he replied: "It will make no difference. It will be all right." This court then said: "The law will protect the companies against frauds, misrepresentations, and breaches of warranty, but it will not lend its aid to support defenses founded upon their own errors or omissions, when they have received the premium, delivered a complete and valid policy, and lain by without objection until a loss has happened; it will not help them to accomplish a fraud upon the assured. For these reasons we think the evidence should have been admitted."

In Combs v. Hannibal Savings & Ins. Co., 43 Mo. 148, there was an application in writing signed by the assured. The application stated, as to the title of the assured, that it was *fee simple*, and that the property was unincumbered. The assured did not have *fee-simple* title to the property, but had only a title bond, and there was a balance of $100 unpaid upon the bond. It was held competent for the assured to show, in the suit upon the policy, that they informed the agent truthfully of the facts as to the nature of their title, and to show that "the agent filled up the application in his own language, assuring the plaintiffs it was all right; that they believed it to be so, and signed the application without being aware of its peculiar phraseology or that the words *'fee simple'* and 'no encumbrance' were in it."

In Rissler v. American Central Insurance Co., 150 Mo. 366, there was a written application signed by the assured. The questions, and answers thereto, contained in the application and made the subject of controversy and defense by the company, are set out at page 370 of the opinion. They were to the effect that the assured took yearly an inventory of his stock, and carefully preserved the inventory; that the date of the last inventory was January, 1895, and its amount was $6200; that he kept a cash book and merchandise account, and had never suffered loss by fire. In that case it was admitted that the assured signed the application after the said answers had been written down, with full knowledge that they were so written. In that case the plaintiff testified that he told the agent his last inventory was taken in 1894 or 1895, he did not remember which, and that the agent replied it was not necessary to get the inventory to ascertain its date, that he knew the assured had taken an inventory, and had a full stock; that the assured called the attention of the agent to the fact that some years before, the firm, of which the assured was then a member, had suffered a loss by fire, and the agent said the inquiry in the application only referred to such a loss where the assured alone was concerned. It does not appear from the discussion in the

opinion that the rule excluding parol evidence was invoked, at least, there is no discussion upon that question, but the essential ruling in the case was made upon the demurrer offered to the evidence, and, under the conclusions stated, the right of the plaintiff to recover was founded upon the estoppel of the defendant under the facts. The company was bound by the construction which the agent placed upon the questions contained in the application, and by the accuracy regarded as sufficient by him. It was said, at page 375: ''The agent represents the company. He is presumed to be more intimately acquainted with the business of insurance than those whom he solicits. The average man relies upon the knowledge and skill of the agent to properly prepare the application and relies upon the authority which the agent assumes. He rightly considers that when the agent is told the facts that he knows which are material and which are not. It is within the apparent scope of the agent's authority to decide what is a satisfactory answer and when with full knowledge of the facts he assures the applicant for insurance that a portion of them are immaterial and himself erroneously misstates others without the slightest suggestion of fraud on the part of the insured, the company who accredits him must suffer from his mistakes and not the innocent policy holder. [Franklin v. Fire Ins. Co., 42 Mo. 456; Combs v. Ins. Co., 43 Mo. 148; Ins. Co. v. Olmstead, 21 Mich. 246, 4 Am. Rep. 483; Kausal v. Ins. Assn., 31 Minn. 17, 47 Am. Rep. 776; Ins. Co. v. Wilkinson, 13 Wall. (U. S.) 222; Ins. Co. v. Baker, 94 U. S. 610; Hotchkiss v. Ins. Co., 44 N. W. 1106; Parsons v. Ins. Co., 132 Mo. 583.]

''In Combs v. Ins. Co., supra, this court said: 'When the disclosure respecting the solicited risk is frank and full, and the insurance company accepts it and appropriates the premiums, and a subsequent loss occurs, the indemnity contracted for should be fairly met and realized to the assured.' '' In that case, as before stated, the plaintiff admitted he knew what answers had been written down by the agent in the application which he signed. In the case involved here the plaintiff testified he did not know what answers the agent had written in the application. To us it seems that an estoppel would not arise more strongly or readily, under the former, than under the latter situation. The decisions in the Combs and Rissler cases have not been overruled, nor, so far as we have discovered, have they been criticised. Both are cited with approval in Gold Issue Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 602.

In claiming conflict, counsel for relator have cited cases which, as we have seen, involve no ruling upon a contract of insurance. In consideration of that, and in consideration also of the holding of this court in the Combs and Rissler cases, we are unable to say that the ruling of the court of appeals conflicts with any of the decisions

mentioned, or with any other decision of this court which we have found, and therefore, it results that the writ issued herein should be quashed. *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion, by LINDSAY, C., is adopted as the opinion of the court. All concur, except *Graves, J.,* absent.