## NATIONAL AID LIFE ASS'N v. CLINTON.

No. 24910.   Dec. 20, 1935.

Rehearing Denied March 10, 1936.

Second Petition for Rehearing Denied March 24, 1936.

McKeever, Elam, Stewart & McKeever and Snyder, Owen & Lybrand, for plaintiff in error.

Otjen & Carter, for defendant in error.

BUSBY, J. On October 27, 1932, George W. Clinton, as plaintiff. on consideration of a jury, recovered judgment in the district court of Garfield county, Okla.. against the National Aid Life Association, as defendant, upon a $1,000 life insurance benefit certificate issued upon the life of his wife, Amanda C. Clinton, who had died in June of 1930.

The insurance company presents the case for review, appearing herein as plaintiff in error. We shall refer to the parties in the order of their appearance in the trial court.

The principal question presented in this appeal is: Does the insertion in a signed written application for insurance by the insurance company's agent of false answers to questions correctly answered by the insured excuse the company from liability on the policy? Particular phases of this general question which are herein involved will be subsequently mentioned and considered.

Since this is a law case which was tried to a jury resulting in a verdict and judgment in favor of the plaintiff, the evidence of the plaintiff, if competent and material, will be treated as true for the purpose of this appeal, and reference to conflicts in the evidence will, in most instances, be avoided in this opinion.

On the 13th day of December, 1924, an agent of the defendant company went to the home of the plaintiff and his then living wife for the purpose of selling insurance. In addition to Mrs. Clinton there were present at the time the plaintiff and Elizabeth Clinton, daughter of the plaintiff.

After a preliminary sales talk in which the advantages of the protection afforded by insurance were explained by the agent, Mrs. Clinton was induced to seek a policy or benefit certificate with the defendant company. The agent then produced an application blank and proceeded to fill in the answers to the interrogatories therein contained. All of the writing on the application except the signature thereon was done by the agent. At the time Mrs. Clinton advised the agent that she had been previously rejected for insurance; that she had had stomach trouble for several years culminating in hospital treatment in 1923 and 1924. That after the hospital treatment she had been pronounced cured and had been in good health as far as she knew since her discharge from the hospital. The agent advised her that the history as given "didn't make any difference" in the insurance he was writing and proceeded to fill out the application. In this application the agent in inserting the answers to interrogatories, among other things. stated in substance that the applicant had never been rejected for life insurance; that she had not had any disease affecting her stomach; and that she had not consulted or been treated by a physician during the two years preceding the application. Mrs. Clinton also correctly gave her height to the agent as 5 feet 8 inches, her weight as 105 pounds and her date of birth March 16, 1879 (making her age 45 at the time the application was written). The agent incorrectly inserted in the application age 44, weight 115, height 5 feet 3 inches.

During the time the application was being filled out by the agent those present could see the agent writing, but did not observe what he was writing. When the instrument had been filled out Mrs. Clinton affixed her signature on a line indicated by the agent apparently without making any examination of the contents of the instrument.

A certificate appended to the application and signed by the agent certified that the questions therein contained had been separately asked and the answers therein contained given by the applicant. It likewise certified that the applicant had been advised that the statements in the application were in the nature of warranties and that an untrue statement of a **material fact** would avoid the policy. It also certified that in the opinion of the agent the applicant was a desirable risk.

A benefit certificate (policy) was issued without medical examination on the application on December 19, 1924, and delivered to the insured. A copy of the application was not attached to the policy. Assessments (premiums) were thereafter paid in full un-

til the death of the insured some six years later. During the major portion of this time the insured, according to the testimony of the plaintiff, was apparently enjoying good health. She died from causes similar to those suffered by her in 1923 and 1924.

The insurance company complains of the admission of the evidence showing that truthful answers were given by the applicant and incorrect answers inserted in the application by the agent, and asserts that this evidence should have been ignored by the trial court and the jury instructed to return a verdict in favor of the defendant company. Complaint is also made of the submission of the issue to the jury as a question of fact. These complaints present the question previously stated in this opinion. Does the insertion in a signed written application for insurance by the insurance company's agent of false answers to questions correctly answered by the insured excuse the company from liability on the policy?

In presenting its case the defendant places reliance upon the United States Supreme Court case of New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 29 L. Ed. 934, and the Oklahoma cases of Deming Investment Co. v. Shawnee Fire Ins. Co., 16 Okla. 1, 83 P. 918 (a case involving waiver in which the principles of estoppel relied upon in this case by the plaintiff were not applied by reason of failure to properly plead the same), and Liverpool, L. & G. Ins. Co. v. T. M. Richardson Lumber Co., 11 Okla. 585, 69 P. 939, a case arising in territorial days and decided by this court upon principles by which we were then governed, but which have since been repudiated or modified. See Western National Ins. Co. v. Marsh, 34 Okla. 414, 125 P. 1094; New York Life Ins. Co. v. Smith, 133 Okla. 256, 271 P. 1087. We deem it unnecessary to encumber this opinion by reiterating or restating the reasons those decisions are not longer applicable.

The controlling principles are found in the later decisions of this court. In the case of Security Benefit Ass'n v. Green, 103 Okla. 284, 229 P. 1061, it was said by this court in paragraph 2 of the syllabus:

"The agent, who is acting within the scope or apparent scope of his authority in asking the applicant questions about his health, and in writing down the answers, is presumed to know what his principal desires. The agent who prepares the application for insurance from the answers of the applicant, which he declares to be satisfactory and receives the premium for the insurance, binds his principal by the delivery of the contract of insurance. The insured has the right to believe, under the circumstances, that the contract he is receiving from the company gives him the indemnity for which he has paid his money. The acts of the agent will operate as an estoppel against the principal to plead the erroneous answers as false representations by the insured."

And in the body of the opinion in the same case we stated:

"If the agent is acting within the scope of his authority in preparing an application for the insured, and deduces erroneous answers from the statements of fact made to him by the applicant, the acts of the agent are binding on the insurance company. In an action by the beneficiary for recovery on the policy the insurance company will be estopped to set up the erroneous answers as false representations by the insured to defeat recovery. * * * The question as made by the answer of the defendant and the plea of estoppel by the plaintiff created an issue of fact for submission to the jury. The issues of fact were fairly submitted to the jury. and the verdict of the jury for plaintiff is amply supported by the testimony."

In the case of Pritchard v. American National Ins. Co. of Galveston, Tex., 139 Okla. 248, 281 P. 774, we said in the syllabus.

"Where the agent of a life insurance company acting within the scope of his authority, is informed by the applicant that the person to be insured is at the time in bad health, such knowledge is imputable to the company. and where, in such case, the agent, notwithstanding such knowledge, prepares an application for insurance showing the person to be in good health, accepts the premium and delivers the application and premium to his company, and on such application, policy is issued and the premium retained, and the company continues to collect the premiums as they fall due until the death of the insured, the defense that the policy was forfeited by reason of false statements contained in the application to the insurer is not available in a suit to collect on the policy."

The rule was applied in the latter case to hold the insurance company liable by reason of the knowledge of its agent, on a policy of insurance delivered on November 8, 1926, pursuant to an application executed on October 25, 1926. The insured in that case died of pulmonary tuberculosis on November 17, 1926, nine days after the policy was delivered. See, also, Atlas Life Ins. Co. v. Sullivan, 172 Okla. 595, 52 P. (2d) 28; Equitable Life Assur. Soc. v. Case, 167 Okla. 119, 28 P. (2d) 571; State Mut. Ins. Co. v. Green, 62 Okla. 214, 166 P. 105; Federal Life Ins.

Co. v. Whitehead, 73 Okla. 71, 174 P. 784; Knights & Ladies of Security v. Bell, 93 Okla. 272, 220 P. 594.

The fact that the insurance company in this case may have been a fraternal company (a matter which will be referred to later), and the statements in the application therefore warranties (Pioneer Circle Ins. Co. v. Turnham, 112 Okla. 266, 241 P. 176), does not remove this case from the operation of the rule. This court has held that technical defenses by fraternal insurance societies are not favored and such companies may be charged with the knowledge of the agent or agencies through which they operate. Sovereign Camp W. O. W. v. Pettigrew et al., 98 Okla. 138, 224 P. 545.

The rule, of course, will not apply where the insured and the agent act together in knowingly perpetrating a fraud on the company (Oklahoma Aid Association v. Pecinosky, 167 Okla. 427, 30 P. [2d] 167), a situation which is not presented in this case.

The company also urges in substance that the insured and her beneficiary in this case should be bound by the contents of the written application and that the company should not be charged with any greater or different knowledge than that disclosed by the information contained in the application by reason of the following restrictive provision contained in the application involved in this case:

"No agent has authority to waive, change or supplement any provision or term of this application; but this instrument together with the certificate issued on the faith hereof shall constitute the entire and only contract between the applicant and the Association."

By the terms of the foregoing restrictive provision the application and the certificate of insurance constitute the contract and the agent is expressly prohibited from waiving any of the provisions thereof. However, counsel in making this argument have overlooked the true basis of the rule which is es_toppel. Insurance companies in this character of cases are not usually held liable on the theory that their agents have the power to waive the provisions of the contract or that the information gained by the agent constituted a part of the contract. The true and correct basis of the principle involved is estoppel. In deciding that the doctrine of estoppel applies notwithstanding the restrictive provision contained in the policy, this court in the case of Federal Life Ins. Co. v. Whitehead, 73 Okla. 71,

174 P. 784, distinctly pointed out the difference at page 79 of the opinion. It was therein said:

"It is well however, to keep in view the fact that there is a vast difference between notice or knowledge and waiver. Notice is information of a condition affecting an existing right. Waiver is the surrender or relinquishment of an existing right. Waiver may be effected voluntarily by an affirmative act by one having authority indicating an intention to waive and need not necessarily be preceded by notice; or waiver may be effected by the omission or failure of a party to assert in his behalf an existing right, which must be preceded by notice. The law enjoins upon all men the necessity to talk when they should talk, or they will not be heard to talk when they want to talk, and here the doctrine of estoppel arises. An estoppel may be said to arise when a person is concerned in or does some act either of record or in pais which will preclude him from averring anything to the contrary. An agent may have notice of a condition that would waive forfeiture, and yet not have authority to make the waiver. The precise question here presented is whether notice to the agent without authority to waive a forfeiture is notice to the company. It cannot be denied that the agent was acting within the scope of his authority when he became possessed of information of a condition that would waive a forfeiture of the policy in this case."

In the case of Atlas Life Ins. Co. v. Sullivan, supra, this court said in paragraph 2 of the syllabus:

"Where the applicant answers questions contained in an application for a policy of life insurance, fully and without withholding material facts, and the agent does not correctly write such information in answer to the question propounded, such agent is acting as agent for the insurance company, and not as agent of the applicant. Know edge of material facts gained by the insurance company's soliciting agent is imputable to the company, and it is bound thereby. The question of the limitation of the right of the agent to waive either a condition in the application or in the policy is not involved. In the absence of fraud or collusion between the soliciting agent and the applicant, which must be pleaded and proved, the company is bound by the information furnished an agent by the applicant at the time of executing the application for insurance, whether or not the agent correctly answers the questions from the information furnished him."

Thus, upon principle and by the definite expressions contained in the past decisions of this court, an insurance company cannot

escape responsibility for the knowledge imputed to it through its agent by inserting restrictions upon the agent's authority in the application for insurance.

While there are some cases to the contrary in other jurisdictions, the better-reasoned cases sanction and approve the doctrine approved by this court. Thus in the case of Despain v. Pacific Mut. Life Ins. Co., 81 Kan. 722, 106 P. 1027, it was said by the Kansas court that an insurance company was bound by the knowledge of its agent. notwithstanding the presence in the application of broad restrictive provisions limiting the power and authority of the agent:

"It is a well-recognized principle of law that a corporation is presumed to know all that comes to the knowledge of its agents during the pendency of a transaction, and relating thereto, which transaction the agent is authorized to consummate. * * * The appellee had a right after he received his policy to presume that the company knew whatever had been communicated to Johnson before the policy was issued. And if, as he testified, the facts contradictory to certain statements in the application had been communicated by him to the agent, he rested under no obligation to communicate such facts to any other agent or officer of the company, but had a right to presume that the officers of the company knew of such facts."

See, also, Continental Ins. Co. of New York v. Pearce, 39 Kan. 396, 18 P. 291, 7 A. S. R. 557; Howe v. Provident Fund Soc., 7 Ind. App. 586, 34 N. E. 830; Stubbins v. State Farmers Mut. Ins. Co. (Mo. App.) 229 S. W. 407; Leisen v. St. Paul F. & M. Ins. Co., 20 N. D. 316, 127 N. W. 837; Tubbs v. Dwelling House Ins. Co., 84 Mich. 646, 48 N. W. 296.

We therefore hold that the presence in the application of the restrictive provisions limiting the power of the agent to waive the provisions of the policy of insurance or prohibiting the exercise of such power by the agent, does not prevent an insurance company being charged with knowledge imputed to it by reason of information gained by its agent while acting within the scope of his authority, nor does the presence of such a restrictive provision prevent the company from being estopped by reason of knowledge thus imputed to it through its agent.

It is also urged in this case that the rule of estoppel heretofore mentioned should not be applied because the insured could read and write, and should, therefore, be held to have known the contents of the instrument signed by her. There are some unfortunate statements in the earlier decisions of this court which lend some color to the argument thus made, as, for instance, in the case of Pioneer Circle Ins. Co. v. Turnham, 112 Okla. 266, 241 P. 176. It is to be noticed, however, in connection with the later decisions of this court heretofore reviewed in this opinion that the rule applied in this case is not made to depend in any manner upon the ability of the insured to read or write or his inability to do so. The rule herein applied is equally available to both the literate and the illiterate. It seems, however, that no careful analysis of this phase of the rule has been made by this court except perhaps in the case of Federal Life Ins. Co. v. Whitehead, supra, in which it was held that the rule was specifically available to one who could read and write, but who had a limited literary ability. In other words, in our later decisions, we have treated the question as immaterial without discussing it. Definite expressions upon the subject, however, are found in the decisions from other jurisdictions in which the better-reasoned authorities support the view that an insured is not under obligation to read the application before affixing his signature thereto where there is nothing to incite his suspicion that his answers have not been correctly recorded. See Kansas Mill Owners' & Manufacturers' Mut. Fire Ins. Co. v. Central Nat. Bank et al., 60 Kan. 630, 57 P. 524; Lewis v. Mutual Reserve Fund L. Ass'n (Miss.) 27 So. 649; State ex rel. Bull Dog Auto F. Ins. Ass'n v. Bland, 316 Mo. 559, 291 S. W. 499; Eaton v. National Cas. Co., 122 Wash. 477, 210 P. 779; Haney v. Security Ben. Asso., 225 Mo. App. 872, 34 S. W. (2d) 1046. The argument was ably disposed of by the Indiana court in the case of Germania L. Ins. Co. v. Lunkenheimer, 127 Ind. 538, 26 N. E. 1082, wherein that court said:

"Nor can it be said that the assured who has fully, frankly, truthfully, and in good faith answered all the required questions. is guilty of negligence in signing, without reading, the application which is thereupon prepared by the agent. He is justified in assuming that the agent has, with equal good faith, truthfully recorded the answers given. He may well say to the company: 'You accredited this man to me as your representative, and I signed the application thus prepared by him. relying upon the character which you gave him when you commissioned him to come to me as your agent. If he acted dishonestly in the matter. you, and not I, must suffer the conse-

quences.' * * * Here one party to the contract states a truth, while the agent of the other party, pretending to record that truth, deliberately records a falsehood instead. When the principal of the dishonest agent is sued, he will not be permitted to escape liability simply because of his own agent's dishonesty. He cannot say to the assured: 'Because you did not suspect my agent of dishonesty, and carefully read the contract written by him before signing it, your negligence was so gross that it relieves me from liability to account to you, and (as is argued with great earnestness in this case) even creates suspicion of your integrity, and that you were in collusion with my agent to rob me.' Nor is it material in this case whether the untruthful answer was thus written from dishonest motives, or merely through mistake. The party whose act it was cannot complain that the other party to the contract was guilty of negligence in trusting either his honesty or his accuracy."

There are authorities to the contrary which we decline to follow. See Sovereign Camp Woodmen of the World v. Lillard (Tex. Civ. App.) 174 S. W. 619; Knights and Ladies of Security v. Considine et ux. (Colo.) 158 P. 282.

In accord with the authorities above mentioned, we hold that an insured is not bound to read an application for insurance prepared by the agent of an insurance company before affixing his signature, where there is nothing to excite suspicion that his answers have not been correctly inserted in the application.

We therefore hold that evidence that correct answers were given to the agent in this case was properly admissible; that the court did not err in refusing to direct a verdict for the defendant, and that the evidence was properly submitted to the jury as one of fact.

The insurance company also makes another complaint in this case which requires an allusion to facts not previously mentioned in this opinion. It appears that at the time the benefit certificate in this case was issued the insurance company was doing business under the name of Oklahoma Aid Association, and, as such, was authorized by its amended charter in force at the time to operate upon the fraternal plan, being authorized to conduct and maintain a lodge in connection with its insurance business.

In the trial of this case before the trial court there was a disputed question as to whether the company was actually and in good faith operating upon the fraternal plan, and evidence was introduced tending to show that no lodge was in fact being conducted by the company as contemplated by the statute. (Section 10564, O. S. 1931.) The insurance company was, of course, contending that this insurance was issued under the fraternal plan, the purpose of such contention being to invoke the rule that the statements contained in the application constituted warranties and not representations under the rule announced by this court in the case of Pioneer Circle Ins. Co. v. Turnham, 112 Okla. 266, 241 P. 176, supra. It is unnecessary for us to consider or decide in this case whether the insurance company was, in connection with this policy, entitled to be classified as a fraternal company, since the trial court gave the company the benefit of this contention and held that the insurance herein was fraternal insurance and that the statements made by the insured were warranties. However, in submitting the issues to the jury in connection with these warranties, the trial court advised the jury, in substance, that incorrect answers by the insured would not enable the company to avoid the policy unless they were material to the risk. In this connection the trial court advised the jury on what constituted false statements of fact which were material to the risk. The company complains of these instructions in this respect, and, as we understand the briefs, urges, in substance, that a misstatement of fact made in connection with a warranty in an application enables the insurance company to avoid the policy, even though the misstatement of fact may not concern a matter which is strictly material. We would be confronted with the necessity of determining whether as a matter of law a misstatement of fact by an insured upon matters not strictly material to the risk might operate to avoid the policy or benefit certificate, if it were not for the terms and conditions of the contract itself in this case. The application itself which was prepared by the insurance company contains the following provision which is specifically pleaded by the defendant insurance company:

"It is understood and mutually agreed as follows: 1. This application imposes no liability upon the Oklahoma Aid Association unless said Association accepts said application and delivers a certificate to this applicant; in which event the statements, representations and warranties in this application contained become a part of the con-

tract of insurance and should it develop, that the insured has misrepresented **any material fact** covered by the above interrogatories or failed to make full disclosure of **any material fact**, his policy certificate shall be null and void. The applicant assumes the entire burden of making full and true statements and revelations as to his bodily condition and history, and of fully informing himself with reference thereto before signing and delivering this application; and he further expressly agrees that no lack of knowledge with reference thereto shall to any extent whatever excuse him for any error or misrepresentation made herein."

And to the application a form of statement or certificate is appended by the company to be signed by the solicitor in which the following statement is contained:

"I furthermore state that I called the applicant's attention to the fact that all statements contained in this application made by him, or her, were to be construed as true statements and warranties and become a part of the contract of insurance, and further informed the applicant that, should it develop that any **material fact** covered by the within answers is not true or that applicant has failed to make disclosure of any material fact, his or her certificate of insurance would be null and void."

From the foregoing provisions inserted in the contract and appended thereto by the insurance company itself, it is apparent that incorrect answers were not to be regarded as working a forfeiture of the policy, unless such answers concern matters which were material. Under these provisions of the contract the trial court did not err in holding as a matter of law that even though the statements made by the insured were warranties, it would not enable the insurance company to avoid the burdens of the policy, unless such incorrect statements, if any, that were made were material to the risk. In view of the contractual provision we deem it unnecessary to consider what the law might be as applied to a contract which did not eliminate incorrect statements upon immaterial matters.

The insurance company also urges that the plaintiff in this case is not entitled to avail himself of the doctrine of estoppel as the basis of his cause of action for the asserted reason that estoppel was not properly pleaded. An examination of the pleadings of the plaintiff discloses that, while specific mention of the doctrine of estoppel is not contained in those pleadings, the facts giving rise to the application of the doctrine are alleged. The applicable rule in this connection as established by this court is that if the facts constituting an estoppel are sufficiently pleaded, the pleader is entitled to the benefit of the law arising therefrom, even though the doctrine of estoppel is not expressly mentioned in the pleading. See Jones v. S. H. Kress & Co., 54 Okla. 194, 153 P. 655; Hunt v. Tulsa Terrazzo & Mosaic Co. et al., 157 Okla. 174, 11 P. (2d) 521; Daniel v. Pappas, 93 Okla. 165, 220 P. 355.

It is also contended by the insurance company that the trial court erred as a matter of law in excluding certain opinion evidence offered by the defendant company. The evidence excluded is mentioned in the brief, but in connection with this alleged error by the trial court no authorities are cited by the defendant company. The error, if any, is not such as is apparent without further research, and, under the rule recognized by this court in the case of Drum Standish Comm. Co. v. First National Bank & Trust Co., 168 Okla. 400, 31 P. (2d) 843, it will not be considered

A careful examination of the record in this case and the instructions of the trial court, viewed in the light of the law as heretofore discussed in this opinion, convinces us that there was no prejudicial error committed. The case was properly submitted to a jury upon the issues of fact involved; the instructions were fair to the respective parties, and the judgment of the trial court should be, and the same is hereby, affirmed.

McNEILL, C. J., OSBORN, V. C. J., and WELCH, GIBSON, and CORN, JJ., concur. RILEY, BAYLESS, and PHELPS, JJ., absent.