DAYTON O. HANEY, GUARDIAN, ETC., RESPONDENT, v. THE SECURITY
BENEFIT ASSOCIATION, APPELLANT.—35 S. W. (2d) 1146.

Kansas City Court of Appeals. January 5, 1931.

*Don C. Carter* and *R. E. Ausmus* for respondent.

*Clark, Boggs, Cave & Peterson* for appellant.

ARNOLD, J.—This is an action to recover upon a benefit certificate of insurance.

Defendant is a corporation organized under the laws of the State of Kansas, with its home office in the city of Topeka in that state, and is duly authorized to operate in the State of Missouri. It is

a fraternal beneficiary society, operating upon an assessment basis, through subordinate lodges located at various places in Kansas and other states; its members are received therein through initiation ceremony, first becoming social and later beneficiary members. The record shows that such a subordinate lodge was located at Centralia, Boone county, Missouri, known as Centralia Council No. 917.

On November 1, 1928, Zulah Haney, a married woman, made written application for a benefit certificate in the sum of $1,000, naming as beneficiaries therein her two children, namely, Dayton, Jr. and Dorothy Frances Haney. Upon said written application defendant issued its beneficiary certificate No. 1708002, in the sum of $1,000, payable to said minor children on the death of the insured. The certificate was delivered to insured on December 14, 1928, and signed by her on the same day.

Insured died on June 4, 1929, and plaintiff, husband of decedent and father of the beneficiaries named, became their duly appointed and qualified guardian, and this suit was instituted by him as such.

The petition is formal, naming the minor beneficiaries, alleging defendant is a corporation organized under the laws of Kansas as a beneficiary society, and authorized to do business in Missouri; that on November 12, 1928, defendant issued and delivered to Zulah Haney, mother of said children, a beneficiary certificate wherein it promised to pay on her death $1,000 to said children. The said certificate is attached to the petition. Further the petition alleges the death of Zulah Haney on June 4, 1929, and that proofs of death were furnished within the required time; that she was a member in good standing at the date of her death and the certificate was in full force and effect; that plaintiff has demanded payment of the amount due under the certificate but payment has been refused. Judgment is sought in the sum of $1,000, with ten per cent additional for vexatious refusal to pay, and attorney's fees.

The second amended answer upon which the cause was tried pleads, first, a general denial; and specifically pleads that under the provisions of the certificate and the by-laws of the association which form a part of the contract, the insured must be in good health upon delivery of the certificate, to make the same effective, and alleges the insured was not in good health upon delivery of the same.

The answer further pleads that the answers to certain questions in the application were false and that the same were warranties, and alleges refusal to pay because insured was not in good health at the time the application was made and the policy delivered and because of false warranties in the application.

The reply was a general denial of the new matter set out in the second amended answer; that said insured made truthful answers to all questions asked in said application; that the answers set out in said application, if incorrect, are not as given by Zulah Haney; that applicant did not read the application before signing it and was at all times ignorant of the contents of the same.

Defendant filed a motion to strike all parts of the reply except the general denial, based upon three grounds: (1) That the second paragraph thereof is not in answer to new matter pleaded in defendant's answer; (2) that it states a part of plaintiff's cause in an attempt to piece out the petition; (3) that plaintiff is estopped to urge that applicant did not read the application, because in the same she warranted that she had read it, that it was correct and that such warranty was in consideration of the issuance of the certificate. The motion to strike was overruled.

The cause was tried to a jury, resulting in a verdict for $1,000, and judgment was accordingly entered. A timely motion for a new trial, stating eighteen grounds therefor, was overruled and defendant appeals. At the close of plaintiff's case and again at the close of all the evidence, defendant asked peremptory instructions in the nature of demurrers which were refused, and these rulings of the court are assigned as error.

Plaintiff in his evidence shows he was regularly appointed guardian of the beneficiary minors on June 11, 1929. C. C. Kimbrell, testifying in behalf of plaintiff, stated he was financier of council No. 917, at Centralia, Missouri; that he had known Zulah Haney since she was a child; that she resided at Centralia, Missouri, and was the wife of plaintiff and mother of Dayton O., Jr. and Dorothy Frances Haney; that Zulah Haney became a member of Lodge No. 917 at Centralia, becoming a social member in October, 1928, and a beneficiary member in December of that year. Witness identified the benefit certificate introduced in evidence and that he witnessed Zulah Haney's signature thereto; that she paid her first assessment December 6, 1928, and also assessments for January, February, March, April and May, 1929; that she died on June 4, 1929; that when she paid her first assessment, he had received the policy from the home office but did not have it with him at the time; that the policy was delivered to her December 14, 1928, at which time she signed it as required and that he (witness) was a witness thereto. The certificate was introduced in evidence and read to the jury, together with receipt for dues paid December 6, 1928.

Witness testified insured was in good standing at the time of her death; that the last assessment was paid May 5, 1929; that the monthly assessments did not become due until the first day of

the month and must be paid by midnight the last day of the month; that he personally delivered the policy to Mrs. Haney, which she signed in his presence; that she was in good health at the time and was "a good risk;" that proofs of death were promptly made. Witness also identified the application upon which the certificate was issued.

At this point there was a stipulation to the effect that defendant was a fraternal organization; and this was followed by a demurrer to plaintiff's evidence which, as above stated, was overruled.

Defendant introduced in its behalf Dr. C. C. Parmer, who testified he was a physician and had practiced in Centralia, Missouri, for fourteen or fifteen years; that Zulah Haney was a patient of his prior to her death; that he had been her family physician for about eight years; that he had attended her in childbirth on May 22, 1923, at which time a dead child was born; that he next attended her in October or November, 1928, at which time she had a lump or growth in her left breast, a tumor; that this date was either October 24th, or November 13th; that the lump or tumor was about the size of an English walnut, under the skin, a little to the left of and above the nipple; that he advised her to return to his office soon, as he "regarded these growths as suspicious," and wanted her to come back in a short time; that, in his opinion, the growth had been there for some months.

On cross-examination, Dr. Parmer testified that on either October 24 or November 13, 1928, Mrs. Haney came to him for examination as to the lump in her breast; that on one of these visits she brought her son who was suffering from nose bleed; that he made a close physical examination of Mrs. Haney's breast; that her clothing was removed and the examination made next to the person; that she had large breasts; the lump was on her left breast about an inch to an inch and a half above the nipple and about the size of an English walnut—that this seemed so through the tissues; that he encountered such conditions frequently on the breasts of women; that he considered them as "serious and suspicious" but would not say she had a cancer at that time; that he told her to watch the growth of the lump and call back and see him; that he did not see her again until February 2, 1929, at her home, having been called there by her husband to examine her breast; that he found the breast very much inflamed, enlarged and very tender; that from November 14, 1928 to February 2, 1929, she had not come back to him and had not reported but what her breast was getting along all right, and as far as he knew it was getting along all right; that a small tumor of the kind Mrs. Haney had would lie dormant for years and never give any trouble; that

they will "flare up" easily, by an injury, bruise, undue pressure or a blow; that he had had patients to carry tumors in their breasts for years without giving any trouble, and then die of other natural causes. Witness testified that Mrs. Haney was taken to a hospital at Mexico, Missouri, on February 9, 1929, was operated on February 11th, and died June 4th, following; that when she came to him about the lump in her breast she was in good health outside of that lump; that she was the very picture of health, big framed, strong, ruddy of complexion, did her own housework and took care of her husband and two children.

Defendant also offered in evidence the constitution and by-laws of the society and a certified copy of the vital statistics record of the death of Zulah Haney which shows she died at Amanda Hospital in Mexico, Missouri, on June 4, 1929; that the physician William Ford, M. D. who signed the certificate, attended decedent from April 28, 1929, to June 4th, following, on which latter date she died at 8:30 A. M., giving the cause of death as "carcinoma of breast, duration eight years;" "contributing—breaking down of carcinoma with infection, during three months;" that an operation was had on February 12, 1929.

In rebuttal, Mrs. Amanda Krippendorf, testifying for plaintiff, stated she had lived in Centralia, Missouri, all her life; that she was a graduate nurse and had much experience in the hospital as a private nurse and had done a great deal of practical nursing; that she lived next door to Mrs. Haney and had known her for several years; that she accompanied Mrs. Haney to the office of Dr. W. G. White at the time the application for the benefit certificate was filled out; that she saw Dr. White fill out the certificate at the time Mrs. Haney signed it; that there was no one present except witness, Mrs. Haney and Dr. White; that she heard Dr. White ask Mrs. Haney the questions in the application; and at the time the same was made out and signed by Mrs. Haney, on November 1, 1928, Mrs. Haney appeared to be a strong, healthy woman; that Dr. White in filling out the application, asked Mrs. Haney the questions as set out in the application and Mrs. Haney answered them; that she heard the doctor ask Mrs. Haney: "Are you in good health at the present time?" and her answer was, "Yes, sir;" that so far as anybody knew, Mrs. Haney was in good health at that time, strong and robust, a healthy looking woman, complexion fair; that she heard Dr. White ask her: "Have you been under the care of or consulted any physician or surgeon concerning yourself within the past seven years?" That she heard Mrs. Haney reply: "No, sir, only when my still born baby was born." That she said her still born baby was born May, 1922 or 1923; that she heard Dr. White ask Mrs. Haney: "If so, when and for what disease

or ailment, name and address of each physician or surgeon." And Mrs. Haney answered, "Dr. Parmer" stating he was her family physician, and when asked "How many children have you borne?" she answered "Four;" that the next question the doctor asked her was: "How old is your last baby?" and the reply was "Eight years old." That witness heard Dr. White ask Mrs. Haney if she was then pregnant and she answered "No." That the doctor then asked "Have your pregnancies and labor been normal?" And the answer was "Yes, sir, they have." Witness stated that as a trained and practical nurse she would say that in the birth of a still born child the labor is usually as normal as in that of a living child, if there is no deformity. Witness stated that after the examination had been finished, Mrs. Haney did not read the application; that Dr. White pushed the paper over to Mrs. Haney and said "You sign here" and Mrs. Haney signed it and left. On cross-examination the testimony of Mrs. Krippendorf was not materially altered or changed.

Dr. W. G. White, offered in rebuttal, testified he was a practicing physician and had recited in Centralia, Missouri about ten years; had practiced medicine since 1892; that in November, 1928, he was examiner for defendant. Witness then testified the application involved in this case was filled out by him for Mrs. Haney and is in his handwriting; that Mrs. Haney signed the application in one place and he in another, as witness; that Mrs. Krippendorf was present at the time the application was being filled out, and heard him ask her the questions and heard her answers thereto. On cross-examination this witness stated he kept a record of the date of the examination and that no one was present thereat except Mrs. Krippendorf, Mrs. Haney and witness.

Plaintiff Dayton O. Haney testified he lives in Centralia, Missouri, and was the husband of Zulah Haney, deceased; that she died on June 4, 1929; that they had two children, Dayton Haney, Jr. and Dorothy Frances Haney, aged respectively nine and seven years; that he called Dr. Parmer to his home about the 2nd or 3rd of February, 1929, to see his wife about a lump in her breast; that he did not know she had a lump in her breast until the latter part of January or first of February, 1929; that he did not know she had previously consulted Dr. Parmer about the lump in her breast; that he came home one Saturday late in January or the first of February, 1929, and his wife complained of pain in her breast; that the place was swollen and there was a good sized lump in her breast; that the doctor did not say what was wrong with her, but did say he was suspicious of it; that Dr. Parmer was their family physician and she was under his care at the time.

This witness testified on cross-examination that the company had notified him that the reason they were declining to pay the certificate was that Dr. Parmer had waited on Mrs. Haney and found a lump in her breast prior to November 1st; that he did not go to Dr. Parmer and suggest to him that the visit in October, 1928, was made for his son and not for his wife; that he did not say anything to Dr. Parmer about it, but that it was his wife who went there for his son. At this point plaintiff closed his case.

Defendant then offered in rebuttal Dr. Parmer who testified the reason he was uncertain about the visit of Mrs. Haney being in October or November was because Mr. Haney came to him and told him he thought he was mistaken in the dates; and that he was quite certain it was Mrs. Haney who made the visit in November. On cross-examination this witness testified he would not be certain whether Mrs. Haney visited him October 24th or November 17th; that he had no interest in the suit; that the only reason he had a record in the matter was because he had not been paid cash at the time of the visit; that no matter what member of the family came to him for treatment, he always charged it to the head of the family; and that his record did not show which member of the family was treated on the dates mentioned.

Dr. White, being recalled by defendant in rebuttal, testified he read the questions to Mrs. Haney at the time he filled out the application and wrote the answers down as she gave them to him; that he did not remember whether she told him she had had four children and two were dead; he knew she said she had two children, a little boy and a little girl, and he knew one was dead; that just as soon as Mrs. Haney answered the questions he wrote them down.

It was shown that the decedent sustained a fall on the 26th or 27th of November, 1928. The defendant objected to this proof. The objection was sustained and the plaintiff made offer to show that decedent, on or about the 27th of November, 1928, while coming into the house, fell upon her left side and breast and suffered injury therefrom. The offer was rejected upon the objection of defendant, based upon the ground that the issue in the case is whether or not "she was healthy and in good health at the time of the making of the application on the 1st of November, 1928." The evidence should have been admitted, but inasmuch as it was rejected at the instance of defendant, defendant is now estopped to claim the evidence was not of some force and value as tending to explain the statements in the death certificate.

This was all the evidence offered excepting the documents held to be pertinent to the issues herein, consisting of the application, the beneficiary certificate, the constitution and by-laws of the de-

fendant corporation and the certificate of the bureau of vital statistics of the State of Missouri relative to this case. On this appeal defendant makes eight assignments of error, all of which are developed and argued in the brief.

The first point urged is the court erred in refusing a directed verdict for defendant, and in support of this point, it is urged (1) that the evidence is uncontradicted that insured was suffering from cancer of the left breast at the time of signing the application; (2) her false warranty of good health avoided the policy; and (3) being false, it was immaterial whether she knew of her condition at the time it was made. The contentions enumerated are based upon the fact that, as shown by the benefit certificate, together with the charter, constitution and laws of the society, and the application for membership and medical examination, signed by the member and made a part thereof, constitute the contract. The application introduced in evidence contains the following statements and warranties:

"As a consideration for the issuance to me of a benefit certificate by The Security Benefit Association, as herein applied for, I warrant that the foregoing answers and statements are true, full and correct, and I agree that the said answers and statements shall be held to be warranties.

"I further declare and agree that I have verified each of the foregoing answers and statements from one to twenty-three inclusive and I know and understand the same, and that the answers and statements herein are as written or given by me.

"As a further consideration for the issuance of a beneficiary certificate to me, I warrant that I am now in sound physical and mental condition."

The certificate shows decedent's acceptance, as follows:

"This certificate delivered to me this 14th day of December, 1928, and accepted subject to all the provisions and conditions set forth in this certificate and the constitution and laws of The Security Benefit Association.

"ZULAH HANEY,

"Witness, C. C. KIMBRELL.                                    "Member."

The certificate issue to insured, under section 5 of the general provisions states:

"5. This certificate shall not be in force and effect until all of the requirements of the Association's laws have been fulfilled, the required assessments paid and the certificate signed by the applicant in person, during the applicant's good health."

Section 98 of the constitution of said association provides:

"The beneficiary certificate shall become effective and be in force from and after the initiation of the member and the payment

of one assessment and subordinate council dues to the financier, the certificate having been signed by the member and delivered to him while in good health.''

It is charged in defendant's second amended answer that insured's answers to questions 14, 17, 20 and 21 in the application were false. Question numbered 14 is "Are you in good health at the present time?" and the answer is "Yes." Question 17 is as follows:

"(a) Have you been under the care of or consulted any physician or surgeon concerning yourself within the past seven years;

"(b) If so, for what disease or ailment, name and address of each physician and surgeon, and give dates;"

The answer to (a) was "No." Question No. 20 was:

"(a) How many children have you borne?

"(b) Give date of birth of last one."

The answer was: "(a) Two; (b) July 11, 1921."

Question 21 was as follows:

"(a) Are you now pregnant?

"(b) If so, how far advanced?

"(c) Have your pregnancies and labor been normal?"

And the answers were: "(a) No. (b) No. (c) Yes."

The application signed by decedent provides:

"As a further consideration for the issuance of a benefit certificate to me, I warrant that I am now in sound physical health and mental condition."

It is insisted, as charged in the answer, that because of the alleged false and fraudulent answers to the aforesaid questions which were warranted by the applicant to be true and made as warranties for the purpose of obtaining the beneficiary certificate; and because of her declarations and warranties that she read and understood each and all of the statements, questions and answers thereto, and that they were written as given by her and were true and correct, and because of applicant's special warranty as to her health at the time she signed the application, which was false, said certificate is null and void, and defendant not liable thereon.

Plaintiff insists the answers complained of are true and the warranties not breached. Hence the basis of this lawsuit.

The first point in defendant's brief has three subdivisions, A, B, and C. Subdivision A is presented under three points all relating to the condition of Mrs. Haney's health at the time she signed the application on November 1, 1928; B relates to the time of delivery of the certificate, December 14, 1928, the defense being that insured had a cancer of the breast when she signed the application and also when the certificate was delivered to her; and C that the demurrer offered by defendant at the close of all the

evidence should have been sustained because insured made false warranties in her application.

The testimony as to the condition of Mrs. Haney's health at the time she signed the application and at the delivery of the certificate has been referred to and it is unnecessary to repeat it here. Defendant urges that the death certificate filed with the Missouri Board of Health, pursuant to provisions of section 5816, Revised Statutes 1919, establishes prima facie that Mrs. Haney's death was caused by carcinoma of the breast of eight years' duration; and that the burden was on plaintiff to overcome the prima-facie case thus made; and that plaintiff failed in this respect. Of course this court will not weigh the evidence, as that is strictly within the province of the jury. It is the well established rule that in considering a demurrer to the evidence, the evidence of the plaintiff must be accepted as true, and plaintiff is entitled to every reasonable inference to be drawn from defendant's testimony, and any evidence of defendant contradictory to that of the plaintiff's witnesses must be excluded. [Link v. Railway, 233 S. W. 834.]

Aside from the death certificate above referred to, defendant calls attention to the testimony of Dr. Parmer, decedent's family physician, as supporting the prima-facie case made by the death certificate. The testimony upon which plaintiff depends to overcome the prima-facie case of defendant consists of the statement of Mrs. Krippendorf and that of Dr. Parmer, elicited on cross-examination. On cross-examination, Mrs. Krippendorf testified:

"That she was a graduate nurse and had had lots of experience in the hospital as a private nurse and had done a great deal of practical nursing; that she had known Mrs. Haney for several years; that at the time the application was signed by Mrs. Haney, on November 1, 1928, she appeared to be a strong, healthy woman; that so far as anybody knew at that time, Mrs. Haney was in good health and a strong, robust and healthful looking woman, complexion fair.

Dr. Parmer stated:

"That he made a close physical examination of Mrs. Haney's breast at the time (October or November, 1928), removing the clothing and making the examination right next to her person; that she had large breasts; the lump was on her left breast, about an inch or an inch and a half above the nipple, and about the size of an English walnut—through the tissue it seemed like that; that he encountered that frequently on women's breasts; that he considered all lumps in the breast serious and suspicious; that he would not say that she had a cancer at that time.

Plaintiff testified on this point:

"That up to the latter part of January, or the first of February, he had not noticed anything wrong with his wife's breast and did not know that she had a lump in her breast."

This testimony to the effect that insured was in good health on November 1, 1928, at the time the application was made, is substantial and the weight thereof is for the jury's wise determination. As to the condition of decedent's health on December 14, 1928, the time the certificate was delivered to and signed by insured, the above testimony is referred to, and also that of C. C. Kimbrell, the financier of the lodge at Centralia. He stated he had known Mrs. Haney since her childhood; that she paid her dues to him on December 6, 1928, but he did not have the certificate with him at that time; that she signed the certificate in his presence on December 14, 1928, and "at that time she was in apparent good health; that she was, apparently, as good an insurance risk as any." The testimony establishes the fact that the insured had a lump in her breast described in the evidence, but just when it first appeared is not clear. Dr. Parmer testified that when he examined her in October or November, 1928, it was present and had been there "some months."

But on cross-examination, the doctor testified he did not tell her she had a cancer at that time and would not say that she had. There seems not to have been a positive diagnosis of cancer until shortly before her operation. That she died of cancer of the breast is not disputed. Under the answer wherein it is alleged she was afflicted with cancer at the time the application was made and when she received the certificate, the burden was on defendant to show she was, in fact, afflicted with cancer at those times. Under the evidence presented we may not hold as a matter of law that insured was afflicted with cancer at the times alleged in the answer.

It is in evidence that cancer may suddenly develop. Defendant cites Clark v. Life & Acc. Co., 288 S. W. (Mo. App.), 944, wherein it is said:

"There is no inconsistency between the testimony of defendant's doctors, the certificate of the physicians in the proof of death on one hand and the inspection report and plaintiff's oral testimony on the other. Plaintiff's witnesses did not attempt to say deceased did not have a goiter. . . ."

The situation in the case at bar is different. Plaintiff denies insured had cancer at the time of her application and when the certificate was received. Besides, Dr. Parmer stated he could not say the insured had cancer in the fall of 1928. This alone may be construed as contradicting the statement contained in the certificate of the bureau of vital statistics to the effect that the duration of the ailment was eight years. As to the allegation in the answer that insured was not in good health when the application was made, the testimony above referred to applies. We hold that, under the evidence presented, we may not say as a matter of law the insured was not in good health and was afflicted with cancer when the application

was executed and the certificate received and signed. There was no error in submitting the case to the jury. [Hodges v. Ins. Co., 6 S. W. (2d) 2 (Mo. App.); Fries v. Royal Neighbors, 210 S. W. 130 (Mo. App.); State ex rel. v. Allen, 282 S. W. 46 (Mo.); Scott v. Ins. Co., 281 S. W. 67 (Mo. App.).] In the case last cited the court said:

"But the proof of death does not show that deceased was suffering from syphilis at that time, but merely shows that he was suffering from that disease at the time of his death. While the certificate of death shows that he had suffered from that disease for five years prior to his death, that was not a part of the proof of death, and plaintiff was not bound by the recitals therein. We are not prepared to pass upon the weight of the testimony, but, if we were, we would not be prepared to say that the weight of the evidence on the subject in controversy was in favor of defendant."

That ruling applies here. The reasoning in the case of National Life etc., Assn. v. Tyree, 8 S. W. (2d) 291, decided by the Court of Civil Appeals of Texas, is in point, wherein it is said:

"Conceding the assured must have had the tumor on the date of the policy, yet it may not have been of a dangerous type. The burden rested upon appellant to show it was of such a character that she could not be then considered to be in sound health, and, while we think the evidence tends strongly to support the view that she was then in a dangerous condition, and thus not in sound health, nevertheless the evidence as a whole does not show this to be true with that degree of conclusiveness which would justify the requested peremptory charge."

What we have already said rules against defendant its charge of false answers to the enumerated questions, and we need not discuss them more in detail.

It is charged the court erred in overruling defendant's motion to strike out that part of plaintiff's reply pleading that applicant made true answers to the questions in her application, but that they were erroneously set down by defendant's examining physician. The point urged is that the reply set up a new and different contract in place of the one alleged in the petition, and that plaintiff's petition did not state a cause of action without the reply: that plaintiff has attempted to "piece out" his petition. We hold this position to be without merit. There was no demurrer to the petition, nor was there a motion to make it more definite and certain. Plaintiff's reply was, first, a general denial, and, second, a defense of new matter set up in the answer. Under section 1235, Revised Statutes 1919, this was proper. [State ex rel. v. Bland et al., 316 Mo. 559, 291 S. W. 459; Hodges v. Ins. Co., 6 S. W. (2d) 72; Cromeens v. Woodmen, etc., 208 Mo. App. 11, 15, 233 S. W. 287.] Plaintiff properly insists the same defense could have been made without specifically pleading it

in his reply. [Modern Woodmen v. Angle, 127 Mo. App. 94, 104 S. W. 297.] We rule against defendant on this point.

It is next charged the court erred in overruling defendant's motion to strike out that part of the reply alleging the answers given were different from those inserted in the application, and in permitting plaintiff to offer evidence thereon, because the application of Zulah Haney warranted that she had read the application and the answers as set out therein were true. It is insisted that inasmuch as the answers to the questions in the application were in writing, and that she knew and understood the same, the insured and those claiming under her are bound thereby and parol testimony tending to prove that insured made different answers from those written in the application was improperly admitted. This point was determined against defendant's contention by this court in Zeilman v. Ins. Co., 22 S. W. (2d) 88, as follows:

"However, in order for this rule to be brought into play, it must appear that the insured did not know what was in the application when she signed it. In other words, that she neither read the application after it was made out nor saw the answers inserted therein. . . . It was incumbent upon plaintiff to show that the insured was ignorant of the fact that the application did not contain the information she had given Griffin when she signed it."

We further held in that case that inasmuch as plaintiff testified she could not remember whether or not she read the application, the court should have sustained the demurrer to the evidence. But in the case before us plaintiff's testimony is to the effect that insured did not read the instrument signed; and Dr. White, who filled it out, did not read it over to her. Under the evidence it is clear insured did not see the application after signing it and it was not attached to the certificate given her. We rule against defendant on this point and hold oral evidence was proper to show the facts pleaded.

This disposes of defendant's point 3, to the effect the court erred in permitting oral testimony tending to prove the insured made answers other than those written in the application. This also disposes of the contention the trial court erred in permitting lay witnesses to testify that Zulah Haney was in sound health at the time of signing the application. The law is well settled in this State that the evidence of lay witnesses as to the general appearance of one as to being in good health is admissible. [Clark v. Ins. Co., 288 S. W. 944; Ryan v. National Council, 257 S. W. 1071.]

Such testimony would be relevant for another reason, to-wit, to refute the charge in the answer to the effect that at the time of the application, as well as on the date of delivery of the certificate, applicant was "weak, sick, diseased and uninsurable."

It is also charged the court erred in giving plaintiff's instruction 3, and in refusing to give defendant's instruction E. These in-

structions are upon the burden of proof. Plaintiff's instruction 3 told the jury that one of the defenses made was that insured on November 1, 1928, was not in sound health, but "was afflicted with carcinoma, that is, cancer, . . . or was sick, weak, diseased and uninsurable on December 14, 1928," and they were instructed the burden of proof was upon the defendant to prove to their reasonable satisfaction by a preponderance, or greater weight of the evidence that she was not in good health at such times, but was afflicted with carcinoma (cancer) of the left breast, or was sick, weak, diseased and uninsurable. Defendant's instruction "E" sought to instruct the jury to the contrary and that the burden was on plaintiff to show insured was in good health at the time the certificate was received by her, to-wit, on December 14, 1928. Plaintiff's instruction 3, faithfully declares the law and was proper. Defendant's instruction "E" does not correctly declare the law and if given, the court would have committed reversible error.

The same ruling applies to defendant's contention that the court erred in refusing its instruction "C" which sought to tell the jury that if insured were suffering from a tumor or growth in her breast on December 14, 1928, the verdict should be for defendant.

Defendant asserts the giving of plaintiff's instruction No. 1 was error for the reason that it permitted the jury to find for plaintiff without finding the answers to the questions set out in the application were true. We have carefully examined this instruction and find that it requires at the hands of the jury a finding that insured made no false answers to the questions in the application. Note the language of the instruction:

"And if you find that at the time she answered the questions in said application on November 1, 1928, she made no misrepresentations or false warranties of any kind as to the condition of her health, and if you find that she made true answers to all of the questions propounded her by said medical examiner at the time, to-wit, on November 1, 1928, as set out in other instructions given you in this cause, then if you believe and find all of these facts, if you find them to be facts, you will find the issues for plaintiff and find for him in the sum of one thousand dollars."

The same ruling applies to defendant's objection to plaintiff's instruction No. 2, to the effect that it permitted the jury to find for plaintiff, although the jury might find the answers to questions 14, 17, 20 and 21 were false. This position is not tenable for the reasons set out in our previous discussion herein of that point relating to the preparation of the application, and the recording of the answers of insured therein by Dr. White, defendant's examining surgeon. The instruction requires a proper finding on this point and was not error. We find no reversible error of record, and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.