GEORGE M. RASSIEUR, Executor of Last Will of JOHN J. GILMORE, Deceased, Appellant, v. THE MUTUAL BENEFIT LIFE INSURANCE COMPANY, a Corporation.—No. 40022.—201 S. W. (2d) 173.

Division Two, March 10, 1947.

Rehearing Denied, April 21, 1947.

*Harry A. Frank* for appellant.

*Jones, Hocker, Gladney & Grand, Orville Richardson* and *J. Chester Jones* for respondent.

50

BARRETT, C.—"This is a suit on a completed oral contract for immediate life insurance," in the sum of $50,000, against the Mutual Benefit Life Insurance Company of New Jersey. The suit is by George M. Rassieur as the executor of John J. Gilmore's estate and as the assignee of the beneficiary, G. L. Tarlton, Contractor, Inc. Mr. Gilmore is alleged to have procured the policy of business life insurance in the sum of $50,000 for the benefit of the corporation, G. L. Tarlton, Contractor, Inc., of which he was president and principal owner. Upon this appeal by the plaintiff the question is whether the trial court was in error in directing a verdict for the insurance company at the close of the plaintiff's evidence.

The plaintiff contends that the policy of insurance resulted and was effectuated under these rather unusual and exceptional circumstances: The plaintiff says that the usual procedure of procuring a signed application which was to be forwarded to the home office as a proposal requiring acceptance and the issuance of a policy by the company was not followed. In this case a "binding receipt" was not delivered to the insured or to the beneficiary, consequently any cases turning on the effect of such "binding receipts" are not in point here. 29 Am. Jur., Secs. 143, 144. In December 1943 Mr. Gilmore applied for and the company issued a $30,000 personal life insurance policy

upon his life. In the procurement and issuance of that policy the usual procedure was followed: there was an application, a medical examination, approval by the company and the issuance and delivery of a policy. The plaintiff's theory is that the oral policy involved here resulted from a company practice, custom and certain rules used in the procurement of additional insurance business. The executor-assignee claims that after the company issues a personal policy pursuant to the usual procedure and thereby determines, after a previous medical examination, that the insured is a standard insurable risk that it is the further practice, custom and rule of the company to insure, within sixty days of the previous medical ▮▮▮▮ examination, that person for an additional amount without further medical examination. In this case it is urged that the company's agent, Lonergan, within the specified time and in accordance with the company's practice and rules, proposed to Mr. Gilmore that the company would, upon the payment of the required premium, insure him for an additional amount of business insurance without further medical examination and that this oral life policy was effectuated upon Mr. Gilmore's acceptance of the proposal and the payment of the premium. The circumstances of the claimed proposal and acceptance were that on February 8, 1944 Mr. Gilmore signed an application in blank (Lonergan filled in the blanks) and Gilmore and Lonergan agreed upon all the terms subject to the approval of Mr. Gilmore's bankers. On February 9th Lonergan called on the telephone and Mr. Gilmore told him that the bankers approved the plan, that he would go ahead with the proposition and consummate it by giving him a check for the premium if Lonergan would meet him at noon. They were unable to meet on that day and when Lonergan called on the following day Mr. Gilmore was in Barnes Hospital suffering, as he intimated, from a temporary "touch of ptomaine poisoning." Mr. Gilmore informed Lonergan that if he would go by his office, G. L. Tarlton, Contractor, Inc., he would be given a company check for the $1,310.50 premium. Lonergan obtained the check and filled out a premium receipt which he retained. Lonergan then gave the agency's secretary the application and check and they were forwarded to the company's home office in New Jersey. The company accepted the check but before the application was acted upon or before a policy was issued Mr. Gilmore died on the 14th of February, following an operation. The insurance company offered to return the premium to the G. L. Tarlton, Contractor, company and subsequently deposited it in court.

In his petition the plaintiff pleaded that the company made the proposal for additional insurance and effectuated the oral policy "by and through its duly authorized agent, T. L. Lonergan." No other fact or circumstance concerning Lonergan's agency was alleged. In its answer the insurance company not only denied the oral contract of insurance but it also pleaded "that said Lonergan was a soliciting

agent for defendant and his duty was to secure and to submit to defendant written applications for life insurance on forms therefor prepared by defendant and to deliver policies so applied for, if and when approved and issued by defendant at its home office in Newark." In its answer the company specifically pleaded that "he had no power or authority to enter into, sign, make or alter life insurance contracts on behalf of or in the name of defendant." The company denied, furthermore, that Lonergan had assumed or undertaken to make a contract of insurance, either oral or written, with Gilmore or G. L. Tarlton, Contractor, Inc.

Mr. Lonergan testified that he was in the life insurance business and had been connected with the defendant company through its Leaver Agency in St. Louis for nineteen years. During 1943 and 1944 he had a written contract with the Leaver Agency and he also had contracts with two or three other agencies through whom he placed business which the Mutual Benefit did not or could not write. The written contract was not admitted in evidence and there was no other direct testimony as to the fact, nature and extent of Lonergan's agency for this company. He had secured the application for and procured the $30,000 policy issued to Mr. Gilmore in 1934 and he had also procured Mr. Gilmore's $30,000 personal policy, issued upon application, in 1943 although he had not personally delivered that policy after it came from the home office in Newark. Thus far, plainly, the evidence establishes that Lonergan was no more than a soliciting agent with authority to solicit life insurance business, take applications, submit the applications to the home office for the company's approval or rejection, collect premiums and deliver policies. Hill v. Metropolitan Life Ins. Co. (Mo. App.), 185 S. W. (2d) 76. He was not an officer of the company (Stockton v. Sedalia Life Ins. Co. (Mo. App.), 31 S. W. (2d) 108), he could not sign, countersign or issue policies of life insurance (Murphy v. Great American Ins. Co., 221 Mo. App. 727, 285 S. W. 772; Neuner v. Gove (Mo. App.), 133 S. W. (2d) 689) and plainly, thus far, was not authorized to enter into an oral contract of insurance with Mr. Gilmore or G. L. Tarlton, Contractor. King v. Mutual Life Ins. Co. of Baltimore (Mo. App.), 105 S. W. (2d) 994; Zielinski v. General American Life Ins. Co. (Mo. App.), 96 S. W. (2d) 1059.

Nevertheless, the appellant urges that the rules generally applicable to soliciting agents do not apply here. The appellant admits his inability to find an exactly similar case on the facts but urges that Lonergan's authority in this case emanates from the rules and practice of the company through which Lonergan had authority to and did make and agree upon a completed oral contract of insurance which was accepted by Gilmore and consummated when the beneficiary, G. L. Tarlton, Contractor, paid the premium. It is argued that Lonergan thereby had the implied and apparent authority to make and con-

clude the oral contract of present, immediate insurance and that Gilmore had a right to rely upon that apparent authority and the company could not secretly or otherwise limit or deny his power. Patterson v. Prudential Ins. Co. (Mo. App.), 23 S. W. (2d) 198, 201. In this connection it should be noted that this case does not involve the company's ratification of any unauthorized acts by Lonergan (Beswick v. National Casualty Co., 206 Mo. App. 67, 226 S. W. 1031) nor does it in fact involve waiver, for the company did not issue a policy and did not subsequently and knowingly retain the premium but tendered the return of the premium to the plaintiff. Compare: Rhodus v. Kansas City Life Ins. Co., 156 Mo. App. 281, 137 S. W. 907; Zielinski v. General American Life Ins. Co., 96 S. W. (2d), l. c. 1064. Nor does the case involve the agent's waiving some matter with respect to which he admittedly had actual authority to act. Mitchell v. Metropolitan Life Ins. Co., 116 S. W. (2d) l. c. 188. Here the plaintiff alleged and claims that the company entered into an oral contract of insurance "by and through its duly authorized agent."

We do not think the record in this case establishes the implied or apparent authority the appellant attributes to Lonergan, but assuming that it does, it does not follow that the appellant is entitled to rely on that authority and recover on this alleged oral contract. Mr. Lonergan solicited and discussed the business life policy with Mr. Gilmore. He took the application, collected the premium and turned them over to the agency secretary as we have said. But, Mr. Lonergan testified that he did not tell Mr. Gilmore that the company would, without any question and without the exercise of discretion, presently insure him or even issue him a policy without further information as to his health. On the contrary, he said that in discussing the matter with Mr. Gilmore "I always use the word may consider." He said: "We always had the privilege to go to the man who had been examined before, and tell him that he may be acceptable to the company for additional insurance, but always subject to the company's approval. The risk would have to be approved at the home office regardless of the number of papers we got signed." Furthermore, he said: "Well, when I mentioned the fact to Mr. Gilmore that it would be subject to the company's approval, I said, 'I am pretty sure they will call for some pictures (X-ray) you had taken,' I added that part. And he said, 'Well, I won't be afraid of the pictures.' " So, whatever Mr. Gilmore may have had a right to assume with reference to Mr. Lonergan's authority, in view of his previous experience and in view of this evidence, he was bound to know that whatever he and Lonergan agreed upon was subject to the company's approval. There is no other evidence or fact in this record from which a contrary inference could be drawn. So, whatever his apparent authority from the rules and practice or otherwise (Lanowah Investment Co. v. John Hancock Mutual Life Ins. Co., 236 Mo. App. 1062, 162 S. W. (2d) 307) there

is no evidence in this record that he had either actual or apparent authority to enter into the alleged completed oral contract for immediate life insurance without the approval of the company. Distassio v. American United Life Ins. Co. (Mo. App.), 179 S. W. (2d) 610; Salisbury v. Indiana & Ohio Live Stock Ins. Co. (Mo. App.), 202 S. W. 412; Neuner v. Gove, supra; Mitchell v. Metropolital Life Ins. Co., supra; Patterson v. Prudential Ins. Co., supra. Because the plaintiff's evidence does not establish that the contract was entered into by and through the company's authorized agent, as he alleged and now claims, the court properly directed a verdict for the defendant.

In this view of the appeal it becomes unnecessary. to determine whether an oral contract of life insurance was in fact entered into and effectuated. Accordingly the judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.