The TRAVELERS INDEMNITY
COMPANY, a corporation,
Plaintiff-Appellant,

v.

Bob BEATY and Missouri State Highway
Commission, Defendants-Respondents.

No. KCD 26957.

Missouri Court of Appeals,
Kansas City District.

May 5, 1975.

Bob J. Keeter, Schroff, Keeter & Glass, Inc., Springfield, for plaintiff-appellant.

Robert L. Hyder, John H. Gladden, State Highway Commission of Missouri, Jefferson City, for defendants-respondents.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

The Travelers Indemnity Company brought an action for a declaration of rights and liabilities under a contract of automobile insurance issued to defendant Bob Beaty and under which the defendant Missouri State Highway Commission claims as a judgment creditor of the insured. The trial court found coverage and Travelers appeals.

As originally issued, the policy was written through the Ogle Insurance Agency and insured two Ford trucks. Thereafter, Belva Beaty, wife of the insured, at his instance made application to the Ogle Agency for additional coverage by endorsement to the original policy for a 1959 Mack Tractor and a 1967 Freuhauf Trailer. The application for the additional coverage shows execution by Belva Beaty on August 1, 1970. The endorsement which issued from Travelers in due course also recited August 1, 1970 as the effective date of coverage.

On July 31, 1970, the Mack-Freuhauf tandem collided with a bridge owned by the Missouri State Highway Commission. The Commission sued Beaty for recovery of damages to the bridge. Travelers provided Beaty a defense under a reservation of rights. A jury returned a verdict for the State Highway Commission for $27,000.

At the trial, the proof made by Ms. Beaty was that, notwithstanding the August 1, 1970 recital of the application, she signed the instrument undated and in blank on July 30, 1970 and then, under that date, paid the premium by her check and received from Ogle in his own hand a receipt for payment. As she left the Ogle office, Ms. Beaty asked whether the tractor and trailer were then insured, and he responded affirmatively.

Travelers contended then, as now, that the effective date of coverage for the tandem, both by application and endorsement, was August 1, 1970, and since the casualty occurred on July 31, 1970, there was no liability. Travelers has contended also that Ogle was not shown to be agent of the insurer and thus was without authority to bind Travelers.

On behalf of Travelers, Ogle testified that he was an insurance broker representing four different companies. Ms. Beaty, who was among his clients, came to his office on August 1, 1970 at about 9:30 a. m. and signed the application which at that time was complete except for some information he already had on file. She then paid him the premium cost for which he gave her a receipt. Ogle testified that he had authority to bind Travelers, and regularly did bind that insurer. Ogle conceded that he was informed of the collision with the bridge on the night of its occurrence, July 31, 1970.

The bound receipt book of the Ogle Agency was shown in evidence. The receipt entries were not sequential. Ogle had acknowledged payment of the Beaty premium by receipt number 144 dated July 30, 1970. The receipt numbered 143 immediately preceding however, was dated July 31, 1970. Ogle offered as explanation that he probably dated the receipt to Ms. Beaty to coincide with the date of her payment check. An examination of the exhibit discloses that some thirty other receipts were not dated sequentially.

It was also in evidence that the Beatys did not use their checks in strict sequence either. Thus, check number 1279, by which Ms. Beaty paid the insurance premium was dated July 30, 1970, whereas their check number 1278 was dated August 1, 1970 and number 1280 bore the date August 3, 1970. The explanation given was that the Beatys shared one check book and, occasionally, Mr. Beaty extracted some of them for his own use. These exhibits also shows that checks number 1275 and 1276, both dated July 30, 1970, cleared for payment on August 6, 1970, whereas check number 1279 written also on July 30, 1970, in payment of the premium did not clear until August 15, 1970.

The dispute focuses upon the legal effect to be given the application signed by Ms. Beaty. The printed form, which calls for the entry of data common for such purposes, bears the rubric: THE TRAVELERS INDEMNITY COMPANY. The last two segments on the reverse side of the application form consist of these printed legends and entries:

---

IMPORTANT—TO BE SIGNED IF APPLICATION FOR COVERAGE IN THE TRAVELERS INDEMNITY COMPANY

I hereby declare that I personally have read this application and I declare that the statements made are true. I understand that this is not a binder of insurance.

Personal Signature of Applicant   x   Belva Beaty     Date 8/1/70

---

How long have you known the applicant?   3 yrs
Has coverage been bound?    ☒ Yes    ☐ No.
Gary L. Ogle      Same
 (Producer)      (Agent)
      Order Secured 8/1    19   70   at   9:30 A.M.

---

As we have shown, it was the testimony of Ms. Beaty that she had signed the form in blank with the expectation that Ogle would complete it and that her only handwriting on the application was her signature. There is no dispute that except for the signature of Belva Beaty, all of the entries in these last two segments of the application form—including the dates—were made by Ogle in his hand.

The declaration of the trial court that the coverage of the tractor-trailer commenced on July 30, 1970 was based upon express findings that Ogle had authority to bind Travelers and that he did so as of that date. Travelers contends that such a judgment proceeds upon either a reformation of the endorsement or upon an oral contract of insurance, theories not pleaded, and therefore, is coram non judice and void.

■ While a judgment cannot be sustained on a theory not pleaded [Northwest Missouri State Fair, Inc. v. Linville, 448 S.W.2d 274, 278[6, 7] (Mo.App.1969)], issues tried by consent of the parties are treated as though they had been raised by the pleadings, and are validly concluded by the judgment. Schwane v. Kroger Co., 480 S.W.2d 113, 117[4] (Mo.App.1972); Rule 55.33(b), V.A.M.R. The predicate for declaratory relief is a justiciable controversy between the parties as to their respective rights and duties which admits of specific relief by way of a judgment conclusive in character and determinative of the issues involved. Glick v. Allstate Insurance Company, 435 S.W.2d 17, 20[1] (Mo.App.1968). The controversy presented by the Travelers' petition was whether, in the face of the August 1, 1970 effective date of the endorsement, the insurer owed Beaty a defense against a claim from a casualty which occurred the day before. Under this pleading, and without objection from Travelers, defendant Beaty gave evidence of an oral agreement of insurance effective July 30, 1970; assuming agency and authority to bind, therefore, there was ample proof of the implied pleading of such an oral contract to support the judgment entered.

■ We conclude, nevertheless, that the Travelers' petition was a sufficient and valid basis for the declaration and judgment of the court. It may be conceded that the purpose of that pleading, as Travelers contends, was for a judicial construction of the endorsement—not a modification of it. In an action for declaratory judgment, however, the trial court has a wide discretion to mold the decree to the needs of the occasion, and may grant such relief as the proof warrants and equity dictates. Melton v. Ensley, 421 S.W.2d 44, 54[17–19] (Mo.App. 1967); Borchard, Declaratory Judgments, p. 425. Thus, if as Travelers argues, the judgment of the trial court worked a reformation of the endorsement, then it was but a determination of the intention of the parties as to the legal effect to be given the contract and thus cognizable under the principal pleading.

The next contention is that the declaration of coverage was erroneous because there was no proof that Ogle was an agent of Travelers with authority to bind coverage. Travelers argues that, on the contrary, the evidence that Ogle represented other insurers proved he was a broker and not an agent of Travelers; and evidence that Ogle procured the endorsement for Beaty, remitted the premium and extended him credit, constituted Ogle an agent for Beaty. The distinction between an agent and a broker is drawn in 16 Appleman, Insurance Law and Practice, § 8725, p. 259:

A person delegated to solicit insurance for a particular company, and to refrain from soliciting insurance for any other company, is an agent, and not a broker. The fundamental distinction in the legal result is that the acts of one procuring insurance as the agent of the insurer are imputable to it, while those of one acting as the agent of the insured, or as a broker, are not; the broker representing the insured for the purpose of procuring the

policy, and the insurer only in order to receive and transmit the premium.

In the conduct of his business, the broker in effect acts as an agent; whether as to a given matter he is the agent of the insured or of the insurer depends upon the circumstances. The rule is stated in H & H Manufacturing Co. v. Cimarron Insurance Co., 302 S.W.2d 39, 43[2–5] (Mo.App.1957):

> The usual and general statement is that a broker is primarily agent to the person who first employed him, and where he is employed to procure insurance he is the agent of the person for whom the insurance is procured insofar as matters connected with the procurement are concerned. Absent some special condition or circumstance in a particular case he is not the agent of the insuror; and he may not be converted into an agent for the insurance company without some action on the part of the company, or the existence of some facts from which his authority to represent it may be fairly inferred.

See, also, Schimmel Fur Co. v. American Indemnity Co., 440 S.W.2d 932, 939[1, 2] (Mo.1969).

Cognately, the authority of an agent to make a contract of insurance is determined by the law of agency. By those principles, a soliciting agent does not have the actual authority to bind the insurer by a preliminary or temporary contract of insurance. 44 C.J.S. Insurance § 230(b); Byrne v. Prudential Insurance Company of America, 88 S.W.2d 344, 348[7] (Mo.1935). Although no actual authority in such respect has been conferred, however, an insurer is bound by the acts and contracts of its agent as are within the apparent scope of authority with which he has been clothed, that is, the authority which although not actually granted, the insurer knowingly permits the agent to exercise. And by virtue of such apparent authority, "a soliciting agent may bind the company by agreements and representations made in connection with the application for insurance which he has the power to take". Mitchell v. Metropolitan Life Ins. Co., 116 S.W.2d 186, 188[3] (Mo. App.1938); 43 Am.Jur.2d § 156.

While the evidence does not make out an actual authority of Ogle to bind Travelers, these circumstances show an apparent authority to do so: Ogle had earlier bound coverage in Travelers for Beaty on the application for the original policy. Also, the application form furnished by Travelers contained the question: "Has coverage been bound?". These indicia of authority to bind were sufficient basis for reliance by Beaty—who was without knowledge of the limits of Ogle's actual authority—upon the agent's representation that coverage was effective immediately.

Thus, in Voss v. American Mutual Liability Insurance Co., 341 S.W.2d 270 (Mo.App. 1960), a form furnished the insurer to the agent which contained the question: "Have you bound coverage?" was held to be an affirmative indication that the agent had authority to bind coverage immediately by an oral contract of insurance. In Baker v. St. Paul Fire & Marine Insurance Co., 427 S.W.2d 281 (Mo.App.1968), the application form contained language indicating that the agent had authority to bind. The court [l. c. 286] adopted this rule:

> The forms furnished an agent for his use in transacting business with the public are cogent evidence as to what he is employed to do, and are representations to the public that he has authority to do things thereby indicated.

See, also, Beswick v. National Casualty Co., 206 Mo.App. 67, 226 S.W. 1031, 1032[1, 2] (1920).

Travelers contends [citing Dickinson v. Bankers Life & Casualty Company, 283 S.W.2d 658 (Mo.App.1955)] that Ms. Beaty could not have relied on an apparent authority to bind because her signature subscribes the application statement: "I understand this is not a binder of insurance", and

she was bound by what she signed. Nor, in view of her testimony that she signed the form in blank, could she have relied upon the subsequent completion by Ogle which indicated affirmatively that coverage had been bound. In *Dickinson,* the plaintiff claimed the coverage of insurance upon a contention that the soliciting agent represented the policy would become effective the day following the signing of the application. Paragraph 9 of the application contained the question:

> Do you understand and agree that the Policy hereby applied for will not take effect unless and until it is issued by the Company and duly executed by the President and Secretary of the Company and that the Company is not bound by any knowledge of, or statements made by, or to any agent, unless set forth herein?

The applicant answered "yes" and signed the form. The court rejected the contention of coverage on the ground that the application, on its face, limited the authority of the agent as to the effective date of the policy, thus the signature of the prospective insured estopped her from relying on the inconsistent representation of the agent.

*Dickinson* does not bear as authority because, rather than expressing a limitation upon the authority of Ogle to bind, the question "Has coverage been bound?" contained in the Travelers form held out such authority for the agent. Furthermore, the Beaty signature juxtaposed beneath "I understand this is not a binder of insurance," merely acknowledged that her signature did not effect a binder of insurance, not that the agent lacked authority to bind the risk. Nor was her reliance unjustified because when she signed the application Ogle had not yet completed the form. The application held out the authority of Ogle to bind, and Ms. Beaty had a right to rely upon a verbal representation of the agent consistent with the apparent authority conferred upon him by the Travelers form. Schimmel

Fur Co. v. American Indemnity Co., 440 S.W.2d 932, 938[3–5] (Mo.1969).

 There was sufficient evidence, upon an appropriate pleading, for the declaration of the trial court that Ogle had the apparent authority to bind Travelers to immediate coverage and did so, according to the intention of the parties to the contract, as of July 30, 1970.

The judgment is affirmed.

All concur.