Ronald SCHWANE, Respondent,

v.

The KROGER COMPANY, Inc., Appellant.

No. 25229.

Missouri Court of Appeals, Kansas City District.

April 24, 1972.

Alvin D. Shapiro, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellant.

Lawrence F. Gepford and R. Bruce Sears, Kansas City, for respondent.

PER CURIAM.

Upon Count I for false arrest (or false imprisonment) the jury returned a verdict for plaintiff for $375.00 actual damages and $1,750.00 punitive damages. Upon Count II for malicious prosecution, the jury's verdict was for $450.00 actual and $2,500.00 punitive damages.

Seeking reversal of the judgment, defendant asserts error in three instructions; that the court erred in failing to require plaintiff to elect between his counts for false arrest and malicious prosecution, and in submitting both counts to the jury; and error was committed in permitting plaintiff to answer a "hypothetical" question that if he made application for a job how would he answer the question "Have you ever been arrested?". It is also contended that Section 537.125, RSMo., 1969, V.A.M.S., creating a presumption of intent to commit a wrongful taking of unpurchased merchandise by any person concealing it upon his person removes the issue of "want of

probable cause" as an element of malicious prosecution, and therefore plaintiff had no cause of action on that count. It is argued that plaintiff's restraint in defendant's store was reasonable as a matter of law; that there was no reasonable relation between the awards of actual and punitive damages on Counts I and II; the court erred in refusing to allow evidence of defendant's state of mind concerning the incident in question; and that there was insufficient evidence to allow the issue of punitive damages to go to the jury.

As to the arrest, plaintiff pleaded, "2. That on or about January 3, 1967, while the plaintiff was a customer and business invitee of the defendant at its grocery store located at 54th and Troost, Kansas City, Jackson County, Missouri, the defendant, through its agents, servants, and employees, acting within the course and scope of their employment, maliciously and with intent to injure the plaintiff did compel the arrest of the plaintiff and did thereafter cause the confinement of the plaintiff in the City Jail of the City of Kansas City, Missouri, and said arrest and confinement was unreasonable and without just cause or excuse and did cause the plaintiff to be restrained of his liberty without right or authority to so do and against the will of the plaintiff."

Plaintiff testified that he was 21 years old, a resident of O'Fallon, Missouri, and was a fourth year student at Rockhurst College in Kansas City, residing at 1321 Rockhurst Road. Before the occasion in question, plaintiff had never been arrested. On January 3, 1967, plaintiff and two of his friends had lunch in the school cafeteria and thereafter the three decided to go shopping. They went to the Kroger store at 54th and Troost where plaintiff's two companions got a shopping cart and proceeded to the cosmetic counter where they purchased what they came for.

Plaintiff then went to the back of the store looking for type "D" and "C" batteries for his tape recorder and radio. These batteries were the size of regular flashlight batteries, but the "C" was a little bit smaller. He held the batteries four in each hand, and the batteries were all that he was going to purchase. As the three were going to the front of the store to go out they noticed a magazine rack. Plaintiff saw a magazine he wanted to look at, and having his hands full of batteries, he transferred two of them to his left hand, "and nonchalantly put two of them in my pocket. and started to read the magazine, started to pick it up, the magazine, and Mr. Cochran approached me." The magazine stand was about 15 feet from the check-out stands. "Q. What happened? A. Mr. Cochran approached me from behind and grabbed me, and asked me, 'What are you doing, and what have you got in your pocket?' or something to that effect." Mr. Cochran asked plaintiff to come over with him to the office, and plaintiff went with him. He again asked what plaintiff had in his pocket, and plaintiff said he had the two batteries and pulled them out. The other six batteries were still in plaintiff's other hand. Mr. Cochran accused plaintiff of stealing the batteries, saying " 'What were you going to do with them, you were going to steal them?' ", and then Mr. Cochran proceeded to call the police and called an employee, Terry Kopp, to the stand (office?) to guard plaintiff, which was done while Mr. Cochran called the police. Officer Washington then came and plaintiff told him the same story as he had told Mr. Cochran. Another officer came and the two took plaintiff to the Dean's office at Rockhurst College where they met with Father Cahill.

It was then decided that the prosecution for shoplifting would proceed, and plaintiff was taken to the Sixty-third Street Police Station by Officer Washington. They did not remain there very long and plaintiff was taken to the downtown station jail headquarters. There plaintiff's wallet and contents of his pockets were taken and put away and he was fingerprinted and his picture was taken. Plaintiff was not placed

in a cell, but was permitted to remain in the office area. Bail was set at $25.00, which plaintiff did not have. He called his friends at the school and in three or four hours, they came and posted the bail.

Plaintiff testified that when he was in the Kroger store he did not intend to steal anything, including the batteries, and he had the money to pay for them. Plaintiff was supposed to go to court the next day, but he called his father who told him to ask for a continuance, which was granted for two weeks. On January 19, 1967, plaintiff appeared with counsel in Municipal Court, and at the close of Mr. Cochran's testimony, for the Kroger Company, plaintiff was acquitted. Plaintiff deposited $100.00 for attorney fees, but still owed some.

The graduation of plaintiff from college was to be June 1, 1969. He was majoring in accounting and hoped to become a Certified Public Accountant. This question was asked him: "Q. If you were to make an application for a company, to work for a company, Ronald, and the question is asked, 'Have you ever been arrested?' What is your opinion as to how you should answer that? MR. SHAPIRO: I object to that question, Your Honor. It is hypothetical and I don't think that he should give his opinion about what he might have to answer in a year or so." After colloquy, the ground of the objection was expanded to include that there was no proper foundation laid for the question, and that "It is all speculation and all hypothetical." The objection was overruled, and plaintiff was permitted to answer "A. I will have to answer 'Yes'."

For defendant Sergeant Ron Ehrhardt of the Kansas City Police Department met Mr. Cochran and Officer Washington at the Kroger store in regard to a call about shoplifting. Mr. Cochran was then undecided as to whether he wanted to prosecute plaintiff. They all went over to see Father Cahill at Rockhurst College, where plaintiff told Father Cahill the story that he wanted to read a magazine in the store, and in plaintiff's presence Father Cahill said, "You don't have too good of a story, son" and that he thought the only way to stop thefts in the area was to prosecute plaintiff, "You have a theft case and go ahead and take the boy down and prosecute him."

Mr. Virgil Cochran was manager at the Kroger Store. When he observed plaintiff and his two companions in the store and at the drug rack he went to the back of the store where there was a two-way mirror. He saw plaintiff remove some batteries from the battery rack, and as plaintiff moved up the candy aisle "he put four batteries in his side pocket on his coat and two more over here (indicating)." At the magazine rack plaintiff put the last two batteries in his pocket. Mr. Cochran did not see a magazine or plaintiff reaching for one. Mr. Cochran then asked plaintiff to step over to the office, that he wanted to talk to him, and "He started over there and we got about 15 feet, and he was getting quite a little ways ahead of me, and I got him by the coat pocket. Q. Why did you do that? A. I had good reason to believe that he was going to get away from me." At the office, Mr. Cochran asked plaintiff to take the batteries out of his pocket, which he did, and plaintiff told him that he put the batteries in his pocket so he could read a magazine. During the time Mr. Cochran was calling the police, he had employee Terry Kopp stay with plaintiff.

█ The judgment must be reversed and the case remanded for new trial because of error in overruling the objection to the above hypothetical question put to plaintiff which was answered by him. There was no proof from any source that it was the custom and practice of prospective employers to ask applicants for employment if they had arrest records, and implicit in the question was the improper assumption of that fact. Hollenbeck v. Missouri Pac. Ry. Co., 141 Mo. 97, 104, 38 S.W. 723, 725, "It may be conceded that a

question based upon the assumption that a certain fact has been proven, when it has not been, is improper." See also Bonslett v. New York Life Ins. Co., Mo., 190 S.W. 870, 874; 98 C.J.S. Witnesses § 341c, p. 53. The matter of any custom or practice of employers to ask prospective employees as to any arrest records is not so notorious that it may be judicially known as a matter of common knowledge, as plaintiff suggests. See Wigmore on Evidence, Third Ed., Sec. 2571, p. 543; and Endicott v. St. Regis Investment Company, Mo., 443 S.W. 2d 122, 126 [3–5], "The basic operative condition of judicial notice is the notoriety of the fact to be noticed." No case is cited by plaintiff that there is a custom or usage of the contended matter, or if so, that the same was notoriously known. There was furthermore no showing that plaintiff, a 21 year old student at Rockhurst College, was in any way qualified to give an answer (an opinion) to the question. Wigmore on Evidence, Third Ed., Sec. 679, p. 799, and pocket part. The prejudicial effect of the question and answer lies in its impact upon the issue of plaintiff's damage.

 Other questions need to be answered inasmuch as the case may be retried. Defendant's claim that plaintiff should have been required to elect as between his counts for false arrest and malicious prosecution must be denied under the particular facts of this case. As contended by plaintiff, there were *two* transactions or occurrences. [It is noted that paragraph 2 of Count I, above set forth, does not specifically plead the matter of Mr. Cochran's detention in the Kroger store. There was no objection as to the evidence of that matter, and the pleading must be treated as having been amended, although not in fact done. Rule 55.54, V.A.M.R.; Harris v. Goggins, Mo., 374 S.W.2d 6, 12 [4–6]; Condos v. Associated Transports, Inc., Mo.App., 453 S.W.2d 682, 690 [9–13], and cases cited.] The first was plaintiff's detention by Mr. Cochran in the Kroger store—a factual situation of false arrest. The second was the arrest by the police officer, which second arrest would under the cases be merged or blended into the action for malicious prosecution. The latter situation is encompassed within the cases relied upon by defendant, one of which is Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68. There was in that case no physical detention by defendants—they merely called the police and instigated an arrest by the officer, subsequent to which there was a prosecution upon a charge of disturbing the peace, the conviction of which was reversed upon appeal. In the posture of the case there was really no issue presented as to election of remedies, but the court did say, loc. cit. 197 S.W. 71 [10], "While causes of action sounding in false imprisonment and malicious prosecution may be joined in the same suit in different counts, which was the course pursued here, recovery can only be had on one count." In the there cited case of Boeger v. Langenberg, 97 Mo. 390, 11 S.W. 223, 224, it was said that a recovery on the second count for false imprisonment would be a bar to recovery on the first count for malicious prosecution because "Defendants could be held in any event, to but one liability on the same facts." The elusive reasoning for the rule is perhaps clarified by reference to the distinctions between the two torts as set forth in 32 Am.Jur.2nd False Imprisonment, Sec. 4, p. 75, "False imprisonment and malicious prosecution are closely related causes of action, and the two are sometimes confused by the courts. * * * In malicious prosecution the detention is malicious but under due form of law, whereas in false imprisonment the converse is true. The detention is unlawful, but malice and lack of probable cause are not essential, as a general rule, to the cause of action. Thus, where the process on which an arrest is made is regular and legal in form and issued by a court of competent authority, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecu-

tion. But a suit for false arrest or imprisonment is the proper action where the aggrieved party is arrested without legal authority, as where he is arrested pursuant to process that is void. * * * In false imprisonment, on the other hand, the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification. The liability asserted against the defendant, in an action for false imprisonment, is one for unlawful interference with the person of the plaintiff. * * *." See also 1 Harper and James, The Law of Torts, Sec. 3.9, p. 231, and Sec. 4.1, p. 300, "In the case of false arrest, the defendant is liable if, without a privilege, he arrests or causes the arrest of an innocent person."; Prosser, Law of Torts, 4th Ed. Sec. 11, pp. 42, 49, and Sec. 119, p. 834, et seq.; and Anno. 21 A.L.R.2d 643, 647. In Hanser v. Bieber, supra, loc. cit. 197 S.W. 70 [2–4], it was said, "False imprisonment consists of the direct restraint of personal liberty. To establish it want of probable cause and of malice need not be proved. (Citing cases.) Unlawful detention is the basis of the action. Actual seizure or the laying on of hands is not necessary to constitute an unlawful detention. If the party is within the power of the person making the arrest, and, subject to such power, but not of his own will, goes with his captor, it is an arrest such as is contemplated to authorize an action for false imprisonment." Such are here the facts of Mr. Cochran detaining plaintiff and causing him to go with him to the office, there to be further detained and guarded without justification as the jury could find. These events gave rise to a separate, distinct cause of action for false arrest, apart from the arrest by the officer and subsequent prosecution (for which latter events the plaintiff would be required to elect between false arrest and malicious prosecution prior to submission to the jury. See Coffman v. Shell Petroleum Corporation, Mo.App., 71 S.W.2d 97, 98 [1], "The two actions, however, are closely akin, and sometimes a transaction may constitute both a false imprisonment and a malicious prosecution.") Since there were two transactions, a false arrest by Mr. Cochran, then an arrest (although instigated) by the police officer out of which arose the prosecution, there was no inconsistency between Counts I and II of plaintiff's petition. There was no double redress for a single wrong, 25 Am.Jur.2d Election of Remedies, Sec. 2, p. 647, but there existed two separate wrongs. Hence the trial court did not err in not requiring the requested election.

■ Defendant says that presumption created by Section 537.125, subsection 3, removes the issue of "want of probable cause", and without such element plaintiff had no cause of action for malicious prosecution. This section makes no reference to the action of *malicious prosecution*. Its reference is to a *detention* by a merchant, his agent or employee, when any person has willfully concealed unpurchased merchandise, either on or outside the premises of a mercantile establishment, in a reasonable manner and for a reasonable length of time, "in order that recovery of such merchandise may be effected, * * *." The section further provides that such person willfully concealing unpurchased merchandise "shall be presumed to have so concealed such merchandise with the intention of committing a wrongful taking of such merchandise within the meaning of subsection 1, and the finding of such unpurchased merchandise concealed upon the person or among the belongings of such person shall be evidence of reasonable grounds and probable cause for the detention in a reasonable manner and for a reasonable length of time, * * *." What the legislature has here done is to add to previously existing law (that a store owner may detain a person therein for a reasonable time for a reasonable investigation when he has reasonable grounds to believe that such person has not paid for what he has received, or is attempting to take goods without payment, Teel v. May Department Stores Co., 348 Mo. 696, 155 S.W.2d 74, 77–78), a presumption that the *willful* concealment of unpurchased property supplies

the intent to steal, and renders defendant's acts lawful. It is still, however, a jury issue as to whether there existed a willful concealment as to such property. The presumption is, therefore, of course, rebuttable on plaintiff's part, as here he sought to accomplish by his testimony that he placed the batteries in his pocket to aid in inspecting a magazine on a rack, and that he had no intent to steal. In fact, he was acquitted of the shoplifting charge. Note that this was before any act on plaintiff's part to avoid payment for the batteries at the check-out counter, or to leave the store without payment therefor. Defendant's argument would cause plaintiff's guilt of theft to be established as a matter of law, which causes the argument to be without merit. Although plaintiff admitted that he put the batteries into his pocket, and Mr. Cochran saw him do it, plaintiff did not admit that he did so willfully or with intent to steal. The statutory presumption, and the evidence tending to rebut it, were for the jury. See the discussion of statutory presumptions in Kellogg v. Murphy, 349 Mo. 1165, 164 S.W.2d 285, 294 [11–14].

■ Defendant next says that plaintiff's restraint in the store was reasonable as a matter of law. There is no solace to defendant from the facts that Mr. Cochran found unpurchased merchandise in plaintiff's pocket under the above related circumstances which the jury could have found constituted no basis for the detention. It is argued that the detention lasted for only a few minutes, and the restraint was thus reasonable as a matter of law. The argument is answered by Hurst v. Montgomery Ward & Co., Mo.App., 145 S.W.2d 992, 995 [6, 7], "Honesty of purpose and intention will not excuse the trespass, and the restraint, *however short*, was unwarranted." (Italics added.)

Other questions presented need not now be ruled since they will probably be obviated on retrial.

The judgment is reversed and the case is remanded for new trial.